R. P. McDOUGALL v. GEO. CRAPON et al.

### Laborers' Liens.

1. Possession of the chattel on which a lien is claimed for work done at common law, is absolutely necessary for the existence of the lien, and by the surrender of the possession, the lien is lost.

2. Under the statute in regard to the liens of laborers and artisans, if the laborer has possession of the chattel on which he claims a lien, he can enforce it by a sale, but if he surrenders it, he loses his lien both at common law and under the statute.

3. If the laborer has never had possession of chattel on which the lien is claimed, or in cases when he cannot get possession, as in cases of repairs to houses, he can enforce his lien in the manner provided by the statute.

4. So, where a wagon was repaired by a laborer, who surrendered it to the owner before payment was made, *it was held,* that the laborer had no lien on the wagon, either at common law or under the statute for his work done and materials furnished in making the repairs.

CIVIL ACTION, tried before *Connor, Judge,* at January Term, 1886, of NEW HANOVER Superior Court.

The defendant Crapon sent his wagon to the plaintiff's shop for repairs, which were made, and the vehicle returned to the owner on January 13th, 1883. The charge for repairs was in materials used, three dollars, and for labor performed twelve dollars. Having possession, the said Crapon ten days thereafter, made a general assignment of his property for the benefit of creditors, including the wagon, to the defendant Ricaud, to whom it was delivered. On January 29th, 1883, the plaintiff filed his claim, in order to perfect his lien, in accordance with the directions of the statute, (The Code, §1784), until which the assignee had no notice of the asserted lien. The present action, begun on the 7th day of May following, before a justice of the peace, is to recover judgment for the debt, and enforce the alleged lien upon the wagon in order to its payment; and after judgment, was removed by appeal into the Superior Court. Upon the trial, both before the justice and in the Superior Court, the indebtedness was admitted, and the sole controversy was in reference to the existence and validity of the alleged lien. Upon the hearing, the Court adjudged, that the claim of the plaintiff for $15 is a lien on the said vehicle, and that the said lien dates back to the 13th of January, 1883, and attaches thereto in the hands of the assignee. And it was further adjudged, that if the said sum, and interest thereon from the 13th day of January, 1883, and the costs of this action, be not paid on or before the 18th day of April, 1886, that the said vehicle be sold to satisfy said judgment, in the manner prescribed by law, and after such

sale, any and all persons shall be barred of any interest therein, claimed by, through, or under the defendants.

From this judgment the said assignee, Ricaud, appealed.

*Mr. John D. Bellamy, Jr.*, for the plaintiff.
*Mr. D. L. Russell*, for the defendants.

SMITH, C. J. (after stating the facts). In determining the question presented, it becomes necessary to examine the statute in regard to liens, since it is plain that the lien given by the common law in cases like the present, is extinguished by the voluntary return to the owner, of the goods to which it adheres while possession is retained. The lien is inseparable from possession, and the surrender of the article is a surrender of the lien. *King* v. *Canal Co.*, 11 Cush., 231; *Baily* v. *Quint*, 22 Verm., 474.

But withholding possession does not satisfy the debt, and was available only as a form of distress to coerce payment from the debtor, who could only thus regain his property. This defect is remedied by an enactment which not only enlarges the circle of liens for the security of the laborer and mechanic, but provides a direct remedy for making the security effectual.

The act of March 28th, 1870, renders, subject to a lien, for the payment of all debts contracted for work done on houses, built, rebuilt, repaired or improved, with the lots on which they stand, every lot, farm or vessel, or any kind of property, real or personal, not herein enumerated. The Code, §1781.

Section 1783 is in these words: " Any mechanic or artisan who shall make, alter or repair any article of personal property, at the request of the owners or legal possessor of such property, shall have a lien on such property, so made, altered or repaired, for his just and reasonable charge for his work done and materials furnished, and may hold and retain possession of the same, until such just and reasonable charges shall be paid, and if not paid within the space of thirty days, provided it does not exceed fifty

·dollars, if over fifty dollars, ninety days after the work shall have been done, such mechanic or artisan may proceed to sell the property so made, altered or repaired, at public auction, by giving ten weeks' notice, etc., * * * * and the proceeds of the said sale shall be applied : First, to the discharge of said lien and the expenses and costs of keeping and selling such property ; and the remainder, if any, shall be paid over to the owner thereof."

This then is a self-executing enactment, conferring upon the mechanic or artisan, the means of making his debt out of the property by his own act, in selling after thirty days' retention, without the intervention of judicial proceeding, either in the Superior Court or that of a justice of the peace.

Section 1780, which, for the preservation of the lien, requires notice of it to be filed within twelve months after completing the labor, and §1790, which points out the mode and Court, according to its jurisdiction, in which proceedings *must* be commenced in order to its enforcement, cannot have been intended for a case in which a resort to any Court is unnecessary, and a complete and efficient measure of relief is committed to, and may be obtained by the party's own act. How could a lien be kept up by filing a notice, when the property may be sold in thirty or ninety days, according to the amount of the claim ? And what need can there be of these provisions, when a party may make his money by exercising the conferred right of selling himself?

These enactments must have been intended for cases where possession is not in the mechanic or artisan, and where an action is necessary for his relief.

So, too, Section 1781, though it puts the lien not only upon buildings and lots, but also upon "any kind of property, real or personal," provides in other sections how it may be available, and gives to one who *has possession* and holds the article for the specified time, a right at once to sell, while others must seek the

aid of a Court, to obtain which notice must be filed.   This construction renders the enactment self-consistent, and secures every needed advantage to the creditor.   It follows, that the mechanic or artisan may exercise his common law right to retain the property, and the statute, recognizing the right, authorizes him to advertise and sell and pay himself, after the specified period of possession.

It is also a necessary consequence that the lien is lost when possession is given up to the owner, as well as the statutory method of enforcing it, since these rights are incident to and dependent on possession, both at common law and under the provisions of the statute. "The pledgee," in the words of a recent author, " certainly loses the benefit of his security, whenever by a complete out and out delivering back to the pledgor, he voluntarily places the property beyond his own reach."   Schou. Pers. Prop., 515.

As the lien ceased when the plaintiff restored the repaired wagon, it of course did not follow it into the hands of the assignee, whether his position is or is not more favorable than that of his assignor.

As no objection was made to the recovery of the plaintiff's debt, he will recover only the costs incurred in the Justice's Court, and must pay those subsequently incurred in prosecuting his claim to the lien.   There is error.

Error.                                                          Reversed.