# TURNER ET AL. v. HORTON ET AL.
## (No. 602.)

Logs and Logging—Liens for Labor—Statutes—Construction—
Appeal and Error—Error in Assessment of Amount of Recov-
ery—Motion for New Trial—Replevin—Judgment Against
Sureties—Error—Necessary Parties.

1. Whatever lien is given by the statute for labor in cutting,
    manufacturing, or in reference to, railroad cross ties,
    wood, poles, or lumber, is dependent upon possession, so
    that if possession is voluntarily abandoned by the per-
    son performing the labor the lien is thereby lost. ·

2. Sections 2857 and 2858, Revised Statutes of 1899, do not,
    standing alone, declare or create a lien for labor per-
    formed upon railroad cross ties, wood, poles, or lumber,
    but they provide in effect merely that when liens for
    the class of labor mentioned exist they shall be concur-
    rent (Sec. 2857), and that persons entitled thereto need
    not identify the particular property upon which the labor
    was performed, but may maintain their lien against any
    and all of the same class of property "owned and held"
    by the debtor.   (Sec. 2858.)

3. The term "lien claims" as used in Section 2857, Revised
    Statutes of 1899, which provides that lien claims for
    certain labor shall be concurrent, is to be understood as
    meaning claims of lien or claims for which a lien is given
    by law.

4. In Section 2858, Revised Statutes of 1899, which provides
    that persons entitled to a lien for labor performed in cut-
    ting or manufacturing railroad cross ties, wood, poles,
    or lumber, may maintain their lien against any or all of
    that class of property "owned and held" by the person
    or persons from whom their pay for such labor is due,
    and may seize and sell the same in the manner provided in
    the chapter, the word "held" is used in the sense of
    custody or possession, so that after the property has
    lawfully passed from the possession of the debtor to
    that of a third person, the right to maintain the lien
    as to such property, will, for the time at least and as
    against such third person, be lost.

5. If Section 2857 could be reasonably construed as declaring
    a lien, the lien would nevertheless be dependent upon
    possession. ·

6. Error in the assessment of the amount of recovery is not
   ground for reversal, where the only grounds stated in the
   motion for new trial presented to the trial court were that
   the decision and judgment are not sustained by sufficient
   evidence, and that said decision and judgment are con-
   trary to law.
7. A judgment in replevin having been rendered against the
   plaintiffs and their sureties, whether a judgment against
   the sureties was proper is not a question to be considered,
   where the sureties are not joined as plaintiffs in error
   or otherwise brought into the proceeding in error as parties
   thereto, but the plaintiffs alone complain of the judgment.

[Decided February 7, 1910.]      (106 Pac. 688.)

ERROR to the District Court, Carbon County, HON. DAVID
H. CRAIG, Judge.

Action in replevin. Judgment was for defendants, and
plaintiffs prosecuted error. The facts are stated in the
opinion.

*L. E. Armstrong,* and *Chris. Mathison,* for plaintiffs in
error.

The plaintiffs below, plaintiffs in error here, claim la-
borers' liens under Sections 2857, 2858 and 2859, Revised
Statutes of 1899. The plaintiffs claimed and here claim
the right to seize and sell the property in controversy, and
to have possession thereof, for the purpose of foreclosing
their several concurrent liens. The statutory lien laws
create both a right and a remedy. (27 Cyc., 19, 20.) Al-
though a part of the lien law may be unconstitutional,
the remainder, if separable, may be valid. (N. E. &c. Co.
v. Oakwood &c. Co., 75 Fed. 172.) A court of equity will
enforce statutory liens where no other method of en-
forcement is provided. (25 Cyc. 682.) And if no valid
method is provided it is the same as if no method had been
provided at all. The statute giving the right to seize,
that is to say, to resume possession of the wood for the
purpose of enforcing the lien, if the laborer be advised
that the statutory method of foreclosing is unconstitutional,

he may go into equity.  If the property subject to the lien
is taken and sold by one who has converted it, the lienor
must proceed in equity to fix his right to the proceeds
in the hands of the wrong doer.   (Judge v. Curtis, 72
Ark. 132.)   The plaintiffs are entitled to possession for
the purpose of foreclosing, no matter what method of
foreclosure they may adopt.  A lien law like the one under
consideration, even though it does not provide for posses-
sion or record, is not unconstitutional.   (Rankin v. Scott,
12 Wheat. 177;  Reilly v. Stephenson, (Mich.) 29 N. W.
99;  Shaw v. Bradley, (Mich.) 26 N. W. 331.)   A mar-
iner's lien has no analogy to common law liens with re-
spect to possession.   (The Mary, Fed. Cas. No. 9186.)

Sections 2857 and 2859 create a lien either expressly
or by the plainest implication.  The lien so created is
statutory and possession is not necessary.   The lien is
good as against all but innocent or *bona fide* purchasers,
and cannot be lost by the lapse of time short of the statu-
tory time as to mortgages.  There is nothing in the evidence
to show a waiver, loss, release, abandonment or forfeiture
of the lien.   The fact that some of the lienors may have
taken security for their claims does not discharge their
liens unless that was the express agreement of the parties,
or their agreement had that effect.   When it is said that
statutory liens will only be extended to cases expressly
provided for by the statutes, it is only meant that liens are
not given on classes of property other than those enumer-
ated therein.   (27 Cyc. 20.)   A statute need not in spe-
cific or express language provide a lien.   (25 Cyc. 662,
663;  the Menominie, 36 Fed. 197.)   Statutes creating
liens are to be construed so as to be effective, if possible.
(4 Cur. Law, 435;  6 Cur. Law, 455;  Krotz v. Lmbr. Co.,
(Ind.) 73 N. E. 275;  T. R. Co. v. Shera, (Ind.) 73 N. E.
293;  Mott v. Min. Co., 135 Fed. 697.)   The provision of
Section 2858 that the lien may be maintained upon prop-
erty owned and held by the debtor shows that possession
in the  lien claimant is not necessary to the existence of the
lien.  The lien as thus defined is different from the common

law lien, which is dependent upon possession. The very nature of the labor in cutting and hauling timber prevented, at common law, the possession which was necessary to a lien. Under our statute concurrent liens do not depend upon their being established by the same act, for all liens are concurrent. The provision that the lien claims mentioned in the statute shall be concurrent liens is to be construed as expressly providing for the liens. (Mott v. Min. Co., 135 Fed. 697; *In re.* Lumber Co., 112 Fed. 759.) The words "lien claims" as used in Section 2857 are equivalent to "claim" or "demand." (25 Cyc. 681; Stone v. Browning, 49 Barb. 244.) The effect of the statute is the same as though it read "lien or claim." (25 Cyc. 681; Ellerson v. State, 69 Ala. 1.) A statutory lien attaching to personal chattels, although no possession of them be delivered, has the same operation and efficacy as at common law, where possession accompanied or followed the deed creating the lien. (Beall v. White, 94 U. S. 382.)

The only aim of our statutes is the protection of *bona fide* and innocent purchasers. Attaching creditors are not *bona fide* and innocent purchasers. They take only the actual interest of the debtor. (Frank v. Hicks, 4 Wyo. 514; Bank v. Cook, 12 Wyo. 492; Story's Eq. Jur., Secs. 64c, 381, 1502; Vatier v. Hynde, 7 Peters, 252; Boone v. Chiles, 10 Peters, 177.) The liens of the plaintiffs are superior to an attachment lien. (5 Cent. Dig., Col. 1088, 1091; 24 id., Col. 2366, 2367.) The lien arises at once upon the doing of the work. (Viles v. Green (Wis.) 64 N. W. 856; Smith v. Greenop, (Mich.) 26 N. W. 832.) The right to lien on property out of possession depends on the statute. (2 Cur. Law, 56.) As illustrating the difference between statutory liens we cite Villenuve v. Symes, (Mich.) 52 N. W. 1008; Babca v. Eldrid, 47 Wis. 189. Custody not being essential to the preservation of a lien it is not dissolved by a sale. (Young v. Kimball, 23 Pa. 193; Husbands v. Jones, 72 Ky. 218; Rankin v. Scott, 12 Wheat. 177; 25 Cyc. 676; Coggshall v. Bank, 57 N. E. 1086.)

The lienors have such special interest in the property that they are entitled to maintain replevin. (Currier v. Ford, 26 Ill., 488; Shinn on Replevin, Secs. 207-214.) The fact that the whole of the property was advertised for sale on execution without reference to the liens entitles the plaintiffs to possession. (Shinn on Repl., Sec. 207, citing Wheeler v. McFarlane, 10 Wend. 318.) Any fact may be proven which establishes the right of possession, under the general allegation that the plaintiffs are entitled to immediate possession. (Schlessinger v. Cook, 9 Wyo. 256.) Previous demand was not necessary. (Boswell v. Bank, 16 Wyo. 161)

The statutory procedure for enforcing the lien is valid. (25 Cyc., 683; Paine v. Gill, 15 Wis. 561.) Waiver, loss, release, abandonment or forfeiture will not be presumed in the absence of evidence clearly tending to show it. (Muench v. Bank, 11 Mo. App. 144.) There was no evidence as to the value of the property and therefore no authority for entering a judgment for the value. (Gordon v. Little, 41 Neb. 250; Ascher v. Schaefer, 25 Mo. App. 1; Hogan v. Peterson, 8 Wyo. 564; Hainer v. Lee, 8 N. W. 888; Romberg v. Hughes, (Neb.) 26 N. W. 351; Archer v. Long, 32 S. C. 171; Hewson v. Saffin, 7 Ohio, 232; Wolf v. Meyer, 12 O. St. 432; Bath v. Ingersoll, 1 Wyo. 281; Tucker v. Parks, (Colo.) 1 Pac. 527; Goldsmith v. Willson, 25 N. W. 870; Martin v. Hertz, 79 N. E. 558; Traction Co. v. Bick, (Ind.) 81 N. E. 617; Campbell v. Bank, (Ida.) 88 Pac. 639; Nolan v. Sevine, (Tex.) 81 S. W. 990; 3 Minn. 134; Jenkins v. Steanka, 19 Wis. 126.) The judgment against the sureties was unauthorized and therefore erroneous. (Lininger v. Raymond, (Neb.) 2 N. W. 359; Sweeney v. Lonne, 89 U. S. 208; Lauchheimer v. Jacobs, 55 S. E. 55.)

*McMicken & Blydenburgh,* for defendants in error.

There is no lien such as claimed by the plaintiffs given by any statute in this State, and whatever lien, if any, that the labor of the plaintiffs entitled them to, it can be a possessory lien only. A court of equity may enforce an

equitable lien, but a statutory lien is in its nature legal rather than equitable. (1 Jones on Liens, Secs. 94, 112.) We do not contend that the statutory procedure for enforcing the lien given for labor bestowed upon personal property is in itself unconstitutional, but if the lien given by the statute should be held not dependent upon possession, then we contend that the statutory procedure would be unconstitutional as to property not in the possession of the lien claimant. Believing that the procedure would be unconstitutional if the lien claimant was not required to have possession in order to establish and continue his lien, the intention of the Legislature to create a lien dependent upon possession is clear, not only from the language of the statute creating the lien, but from the nature of the procedure for enforcing it. In a proceeding to enforce an equitable lien the claimant would have no right to the possession, but the procedure would be to have the property sold and the proceeds distributed. The sections of the statute upon which plaintiffs rely do not declare a lien. A seamen's lien is in the nature of a possessory lien. He has it so long as he remains on the ship, and when he departs the lien is lost, and so in the case of a logger's lien under our statute, if there is any such lien. It is lost when the laborer abandons possession. (Fein v. Trust & Loan Co., 3 Wyo. 332.) By taking security some of the plaintiffs abandoned their lien, if they had any, the evidence showing that such was the intention.

The statute creating a lien must be strictly construed as in derogation of the common law, while that portion of it relative to the procedure for enforcing the lien may be liberally construed. Our statutes with reference to this class of liens were intended from the enactment of the first statute to be mere possessory liens. The allegation of value in the petition was a material one, and since it was not denied it became a conceded fact in the case and was sufficient to support the assessment of damages.

From an examination of the cases where similar proceedings have been authorized for the foreclosure of liens

of this character, it will be found that such proceedings have been permitted only where the property was in the possession of the lien claimant as at common law. (1 Jones on Liens, Sec. 723, and cases cited; Huntsman v. Lumber Co., 29 S. E. 838; Keith v. Maguire, (Mass.) 48 N. E. 1090.) Section 2857 merely provides that where there are liens of the kind mentioned they shall be concurrent, and Section 2858 provides merely that where there are such liens it shall not be necessary for the claimant to identify the particular tie, stick or piece of lumber upon which the work was performed. Section 2858 is a necessary sequence of Section 2857, for if the liens are to be concurrent, then necessarily each individual lienor cannot be supposed to identify each particular stick or piece that had been cut by him. The two sections merely apply to liens at common law, and do not give any lien upon property out of the possession of the claimant. The laborer merely has the right, if he has a lien at all, to detain the property until the amount due him is paid. (*Ex parte* Foster, Fed. Cas. No. 4960; Vose v. Robertson, 46 Ala. 483; Allen v. Shortridge, 62 Ky. 34; Stewart v. Flowers, 44 Miss. 513; Reed v. Darrow, 2 Edw. Ch. 412; McCaffrey v. Wooden, 62 Barb. 316; Jordan v. James, 5 Ohio, 88; Clemson v. Davidson, 5 Binn. 393.) These sections so far as they give a lien at all are merely declaratory of the common law lien.

POTTER, CHIEF JUSTICE.

This is an action in replevin for the recovery of possession of 325 cords of four foot wood. There are several plaintiffs, who allege a common interest in the subject of the action and the relief demanded, and that they have a special interest in the property by virtue of concurrent liens for the amounts due them respectively for their services in chopping, cutting and preparing or hauling certain poles, mine timbers, and cord wood, including the wood in controversy, under contracts with and at the request of the defendants, Young and Carver. The other defendants

named in the petition are E. M. Horton, J. L. Stevenson, George O. Baker, S. M. Morgan and the Ferris Merc. Co. The three last named defendants are judgment creditors of Young and Carver, and Horton was the Sheriff of the county, and Stevenson the Deputy Sheriff.

It is alleged in the petition that the services of the plaintiffs were performed prior to December 24, 1906, but in view of the stipulated facts it is probable that the services were all performed prior to December 20 of that year. In the main the material facts were agreed to by stipulation entered into upon the trial. The performance of the labor by the plaintiffs and the value thereof as alleged in the petition, was admitted. The facts agreed to as to the possession of the property are as follows: From and after December 20, 1906, neither the plaintiffs nor anyone on their behalf had any possession of the wood, but on or about that date each and every one of the plaintiffs left the vicinity of the wood and did not return thereto, and made no claim to its possession until about the time of bringing this suit, except that on Jan. 25, 1907, pursuant to the provisions of the statute relating to the enforcement of liens for labor on personal property, the plaintiffs applied to a justice of the peace of the county for the appointment of appraisers to appraise the timber, poles and wood upon which the labor of the plaintiffs had been performed. On December 31, 1906, Young and Carver were in constructive possession of the wood in controversy, and on that date, in the suits brought by the judgment creditors aforesaid, the defendant, Stevenson, as Deputy Sheriff, attached and took possession of the wood as the property of Young and Carver, and retained possession thereof and subsequently levied upon and advertised the same for sale under executions issued out of the District Court to satisfy the judgments recovered in said attachment suits. Thereafter, upon the commencement of this suit, March 9, 1907, the property was taken from the possession of said officer upon a writ of replevin and delivered into the possession of the plaintiffs. The defendants, Young and Carver,

did not appear to the action, and upon the trial there was a general finding in favor of the other defendants to the effect that at the commencement of the action they had the right of possession, and a finding that the value of the property was $812.50; and a judgment was rendered upon the findings against the plaintiffs and their sureties and in favor of said defendants for the amount so found to be the value of the property, with interest and costs. A motion for a new trial was made and overruled, and the plaintiffs bring the cause to this court on error.

1. The principal question to be decided is whether plaintiffs had any lien or liens upon the property when the action was brought. The liens are claimed under the provisions of the statute found in Sections 2857, 2858 and 2859, Revised Statutes, 1899. Those sections are as follows:

"Sec. 2857. All lien claims for labor performed in cutting or manufacturing railroad cross ties, wood, poles, or lumber, or for doing any labor in reference thereto, shall be concurrent liens upon the same, and shall be paid, pro rata, out of the proceeds arising from the sale thereof, if the same shall be sold."

"Sec. 2858. Persons entitled to a lien for labor performed in cutting or manufacturing any railroad cross ties, wood, poles, or lumber, shall not be required to identify any particular tie or ties, or sticks, poles or boards, but may maintain their lien against any or all of that class of property owned and held by the person or persons from whom their pay for such labor is due, and may seize and sell the same as provided in this chapter."

"Sec. 2859. No lien upon personal property shall be valid as against an innocent and *bona fide* purchaser, unless the person having the right of such lien shall notify said purchaser before he makes payment for such property, of the existence of such lien, in which case, the purchaser shall be responsible to the person having such lien claim against said property, for the full amount of his claim, and all legitimate costs and expenses, and payment made

on such lien claim shall apply on payment for such personal property."

The above sections are to be read and construed in connection with the preceding sections of the chapter. Standing alone they do not declare or create a lien. Sections 2857 and 2858 provide in effect merely that when liens for the class of labor mentioned exist they shall be concurrent, and the persons entitled thereto need not identify the particular propety upon which the labor was performed, but may maintain their lien against any or all of the same class of property "owned and held" by the debtor. Each of the two sections is consistent with the other, and while they recognize that a lien of the kind referred to may exist, they fall short of declaring the lien. Section 2857 does not state that all claims for labor in cutting wood, poles, &c., shall be concurrent liens; but that all "lien claims" for such labor shall be concurrent liens—thus saying in effect that all liens for the labor shall be concurrent. The term "lien claims" is to be understood as meaning claims of lien, or more specifically, claims for which a lien is given by law. That there may be a "claim" for the labor is not sufficient to bring a case within Section 2857, but there must be a lien. Had it been intended by that section to create a lien, it is only reasonable to suppose that language to that end would have been employed similar to that found in preceding sections of the chapter, presently to be referred to, expressly declaring that for certain services mentioned there shall be a lien. Section 2858 applies expressly only to "persons entitled to a lien," making it necessary to look elsewhere to ascertain when and in whose favor the lien is given, if at all. It is clear, we think, that in the absence of some other provision of the statute giving the lien, the two sections aforesaid would be without any practical effect.

The first territorial legislature enacted a law relating to liens on personal property for labor bestowed thereon. (Laws 1869, Ch. 44.) The first section of the act provided that any mechanic, artizan, or other person "who

shall make, alter, repair or bestow labor upon any article of personal property, at the request of the owner or party having possession thereof, or who shall furnish materials from which the same is made or repaired, shall have a lien upon all such articles of personal property for his reasonable charges for the labor performed, or materials furnished." The subsequent sections provided a remedy for the enforcement of the lien by sale at public auction after an appraisement of the property, which provisions have been substantially retained in the statutes.

In 1873, another act was passed, relating to the same subject. (Laws 1873, Ch. 43.)   Section 1 of that act gave a lien to agistors and livery stable keepers upon animals entrusted to them for the purpose of feeding, pasturing, &c., and declared that they "shall be authorized to retain possession" of such animals until the amount due for the feeding, &c. is paid.   Section 2 declared a similar lien in favor of common carriers and warehousemen for their reasonable charges for transporting or storing personal property at the request of the owner or person lawfully in possession thereof, it being provided that a common carrier and warehouseman "shall, *in like manner*" have a lien upon all such personal property, &c.   Section 3 covered the class of labor generally referred to in the first section of the act of 1869, but employed language differing slightly from the previous act.   It provided that any mechanic or other person who shall make, alter, repair, or bestow labor upon any article of personal property, "for the improvement thereof" &c., "shall, *in like manner*, have a lien upon all such articles."

In preparing the Revised Statutes of 1887,  it appears that finding these two sections in separate acts—Section 1 of the act of 1869, and Section 3 of the act of 1873, the revisers regarded them as not only covering the same matter, but as the same in effect, for they made the section aforesaid of the act of 1869 the first section of the chapter of the revision relating to the subject, and omitted any reference to Section 3 of the act of 1873.   (Rev. Stat.

1887, Sec. 1469.) The original provision thus originally enacted in 1869 is retained in our statutes, and is the first section of the chapter embracing the sections above quoted with reference to liens for labor in cutting and manufacturing railroad cross ties, wood, lumber, &c. (Rev. Stat. 1899, Sec. 2843.) It reads as follows:

"Sec. 2843. Any mechanic, artisan, or other person who shall make, alter, repair or bestow labor upon any article of personal property, at the request of the owner or party having possession thereof, or who shall furnish materials from which the same is made or repaired, shall have a lien upon all such articles of personal property, for his reasonable charges for the labor performed, or materials furnished and used in such making, alteration, repair or improvement."

Sections 1 and 2 of the act of 1873 became respectively Sections 2844 and 2846 of the Revised Statutes, 1899. Section 2847 provides that if any charges for which a lien is given "by the preceding sections of this chapter be not paid within thirty days after the same becomes due and payable, the mechanic or other person to whom such lien is given may apply to any justice of the peace of the county wherein the property on which the lien is claimed is, to appoint appraisers to appraise such property." The justice is thereupon required, by warrant under his hand, to appoint three disinterested householders of the county as appraisers. Then follow provisions for selling the property upon notice at public auction. There is no provision for filing or recording the lien as in the case of other liens, such as those of mechanics and others for labor and materials furnished in the construction of buildings. The provision, if any, declaring a lien for the kind of labor performed by the plaintiffs is to be found in said Section 2843. Conceding for the purposes of this case, but without deciding, that the lien is there given, it becomes necessary to consider the nature and effect of the lien, and the conditions upon which it may be preserved or lost.

The statute declares that for the labor bestowed or materials furnished the mechanic, artizan, or other person "shall have a lien" for his reasonable charges. A lien in its proper legal sense is said to import that one is in possession of the property of another, and that he detains it as security for some demand which he has in respect of it, and hence it implies possession by the creditor, title in the debtor, and a debt arising out of the specific property. (1 Jones on Liens, (2nd Ed.) Sec. 20.) At common law, a person who had bestowed labor upon an article of personal property, or done some other act in reference to it, by which its value was enhanced, had the right to detain the same until reimbursed for his expenditure and labor. That is known as the common law lien. Its continuance depended upon possession, and whenever the possession was voluntarily surrendered, the lien was lost. (Oakes v. Moore, 24 Me. 214; Arians v. Brickley, 65 Wis. 26.)

Our statutes have extended the lien to persons not entitled to it at common law, such as agistors and livery stable keepers, but it is generally held that statutes of that character are to be construed in accordance with the principles controlling the lien at common law. (1 Jones on Liens, (2nd Ed.) Sec. 749.) Hence, unless the statute either expressly or by clear implication provides to the contrary, possession is essential to the existence and preservation of the lien. It was so held by this court with reference to the lien of an agistor under the statute, and it was said that "the lien being founded upon possession, it must ordinarily cease when the possession ceases. If one voluntarily parts with the possession of the property, the lien is thereby lost." (Fein v. Wyo. Loan & Trust Co., 3 Wyo. 332.) The necessary effect of that decision is that the nature of the remedy provided for enforcing the lien is not such as to eliminate the element of possession. The mere fact that Section 2843 omits the provision found in the section relating to the lien of an agistor authorizing the person entitled to the lien to retain possession, is not significant and does not suggest a different

construction. The meaning and effect of the declaration that a person who has bestowed labor upon an article of personal property shall have a lien thereon is that he is authorized to retain possession until his reasonable charges are paid. That is what the word lien signified at common law with respect to a claim against personal property for labor bestowed upon it, and it must be understood as so used in the statute. (Ferriss v. Schreiner, (Minn.) 44 N. W. 1083; Fishell v. Morris, 57 Conn. 547; McDougall v. Crapon, 95 N. C. 292; Wenz v. McBride, 20 Colo. 195; McDearmid v. Foster, (Or.) 12 Pac. 813; Bierly v. Royse, (Ind. App.) 57 N. E. 939; Glasscock v. Lemp, (Ind. App.) 59 N. E. 342; 1 Jones on Liens, Sec. 749.)

The Colorado statute was substantially like our Section 2843, and in the case cited it was held that the lien as at common law imports simply the right to hold and detain the property. The court said: "While the statute extends the right of lien to others than those who at the common law could claim its benefits, and provides a remedy for its enforcement, it does not confer a lien except upon the same conditions that one would have existed at the common law, and possession of the property upon which the lien is claimed is still essential to retain the lien upon it. In other words, the statute is only declaratory of the common law, and must be interpreted in conformity with its principles."

The statute of Oregon considered in McDearmid v. Foster, *supra,* is also like Section 2843, except that it authorizes the laborer to retain possession until all just and reasonable charges shall be paid. The court said: "The word 'lien' had, long prior to the passage of this statute, acquired a settled meaning. The term imported that the party was in possession of the thing he claimed to detain. It was a right to hold the property upon which payment was required to be made, either for the purchase price, or for some care, labor, or attention bestowed upon it. A large class of persons, at common law, were authorized to claim such right. It included all persons, who, by their

labor or skill, had imparted an additional value to the goods or chattels in their custody, though it was confined mainly to tradesmen. This statute has extended the right to others, who before would not have been allowed to claim its benefits. * * * The lien under the statute is of the same nature it formerly was, and the same circumstances must combine to create it. There must be a possession of the thing, otherwise there cannot, without a special agreement to that effect, be any lien. The term 'lien,' as used in the statute, means the same it ever did,—the right to hold the thing until the payment of the reasonable charges for making, altering, repairing, or bestowing labor upon it. Possession of the article is a requisite essential."

Unlike the condition in several states, there is no provision in our statutes indicating the existence of the lien without possession, such as requiring the claim to be filed or recorded, or giving the right to obtain possession by process of attachment. The remedy provided for enforcing the lien is consistent only with the theory that the claimant is in possession of the property to be appraised and sold. Section 2856 is significant in this connection. It provides that "no mortgage on personal property shall be valid as against the rights of any person entitled to a lien under the provisions of this chapter." In view of the statutory provisions for record notice of liens on personal property in all other cases where the owner is allowed to retain possession, it is unreasonable to suppose that a different rule was intended as to this class of liens, giving the claimant of an unrecorded lien without possession of the property priority over a duly recorded mortgage. Section 2856 assumes, we think, that the property will be in the possession of the person entitled to the lien.

It is contended that Section 2858 expressly provides for the existence of the lien upon property not in the possession of the persons who have performed the labor. That section is not to be so construed. In the first place it is to be read and construed in connection with the other sections of the chapter, and it only refers to "persons en-

titled to a lien," declaring that they may maintain their lien, not alone against the particular tie or ties, sticks, poles or boards, with respect to which the labor was performed, but against all of that class of property "owned and held" by the person from whom the debt is due. To come within the provisions of the section, a party must first be entitled to a lien. He may then maintain it against the class of property mentioned. The right to the lien, if not existing upon the principles of the common law, must primarily be found in some other provision of the statute. Under this section the lien of a person entitled thereto may, no doubt, be maintained by taking possession of any of the same class of property as that in relation to which the labor was performed, and, perhaps, by resuming possession of the particular property upon which the labor was bestowed, so long, in either case, as it is "owned and held" by the person from whom the debt is due. The word "held" is used in the section in the sense of custody or possession, so that the authority to "seize and sell" applies only to property which the person owing for the labor continues to own and to have in his possession; and the provision that the lien may be maintained by the person entitled to it includes the idea of initiating it. To "maintain" the lien, therefore, it is necessary to obtain possession while the property is owned and held by the debtor. When the latter has ceased to own the property, or it has lawfully passed out of his possession, the right to maintain the lien as to such property will, for the time, at least, and as against third parties, be lost. Not only that, but without possession in the person who has performed the labor, there will be no lien. Conceding that the laborer may have a right to establish a lien by taking or resuming possession, if the owner has continued in possession and to own the property, the lien will not exist until possession is taken or resumed by the person entitled thereto.

If, contrary to our view of Section 2857, it could be reasonably construed as declaring a lien, the lien would, nevertheless, be dependent upon possession. Whatever pos-

session either of the plaintiffs had was voluntarily abandoned before the property was attached by the Sheriff. From the time the Sheriff acquired possession under the attachment writs, the property had not been "held" by the persons from whom the debts for the labor of plaintiffs was due. Upon the facts of this case, the right to maintain the lien was lost, so that at the commencement of the suit the plaintiffs were not in a position to maintain a lien as to the property in the Sheriff's lawful possession. They had no lien upon that property, and were not, therefore, entitled to its possession.

2. It is contended that the judgment is erroneous because based upon a finding as to the value of the property without any evidence thereof. The petition alleges the value to be $812.50, and it appears by the Coroner's return to the writ of replevin, that it was agreed by the parties that said amount, which was the value as fixed by the appraisement in the attachment suits, should be taken as the value, without further appraisement, for the purpose of determining the amount of the undertaking given by the plaintiffs to secure a delivery of the property to them. The sum aforesaid was found by the court to be the value, and the finding was based, no doubt, upon the allegation of the petition in the absence of direct proof. We think it unnecessary to decide whether it would have been incumbent upon the defendants, notwithstanding the averment of the petition, to prove value, upon the question being properly and timely raised. Under the circumstances the case should be held to come within the rule announced in Syndicate Imp. Co. v. Bradley, 7 Wyo. 228. It was there held that error in the amount of recovery is not covered by, or included in, a specification contained in a motion for a new trial, that the decision is not sustained by sufficient evidence or is contrary to law. In the case at bar there were but two grounds stated in the motion for new trial. First, that the decision and judgment are not sustained by sufficient evidence, and are against the evidence. Second, that the decision and judgment are contrary to law. As

said in the case last above cited, error in the assessment of the amount of recovery "was not specified as a ground for new trial, and consequently was not presented to the District Court. It is, therefore, no cause for reversal by this court."

3. The judgment was rendered against the plaintiffs and their sureties. The statute expressly provides that the judgment shall be so rendered in replevin when the property is delivered to the plaintiff and the finding is for the defendant. (Rev. Stat. 1899, Sec. 4157.) On oral argument it was suggested that, notwithstanding the statute, the judgment. in that respect was improper and erroneous. It is not necessary to consider that question. The sureties were not joined as plaintiffs in error, nor otherwise brought into this proceeding in error as parties thereto, and they are not here in any way complaining of the judgment.

For the reasons stated we find no error in the record, and the judgment will be affirmed.

BEARD, J., and SCOTT, J., concur.