ALONZO THOMAS v. CARVEY A. MERRILL.

(Filed 13 October, 1915.)

1. **Liens — Work Done — Severed Trees — Personalty — Interpretation of Statutes.**

One who enters into a contract to cut, haul and raft logs after the standing timber upon lands have been felled for the purpose, has, while logs are in his possession, a lien thereon for the services thus performed, under the provisions of Revisal, section 2017, the timber after its severance from the land being regarded as personalty. As to whether the lien rested also by common law, *quære*.

2. **Same—Vendor's Lien—Claim and Delivery—Accounting—Value of Property Seized.**

The plaintiff contracted to sell the standing timber on his lands to L., the latter to cut, haul and remove it, and pay therefor at a certain price per thousand feet. L. contracted with the defendant that the latter should receive a certain sum per thousand feet for cutting, hauling, rafting the logs after the latter had been felled. L. abandoned his contract with the plaintiff, who took possession of the logs that had been cut and hauled, by claim and delivery proceedings, from the defendant, the value of which exceeded the amounts due by L. to both the plaintiff and defendant; but the logs were lost or not available for a sale thereof. *Semble*, the plaintiff did not have a lien on the logs for the purchase price, and *Held*, that the plaintiff must account to the defendant for the value of the logs, and the latter is entitled to recover the amount due him for cutting and hauling them.

3. **Contracts—Deeds and Conveyances—Felled Timber—Personalty—Statute of Frauds.**

An agreement to cut, haul, etc., timber after it has been severed from the lands relates to personal property, and does not come within the provisions of the statute of frauds, requiring contracts affecting real property to be in writing.

APPEAL by plaintiff from *Connor, J..* at the June Term, 1915, of CARTERET.

Civil action tried before *Connor, J.*, a jury trial having been waived, and a case stated for the opinion and judgment of the court, which is as follows:

1. The plaintiff, Alonzo Thomas, was at the time of the institution of this action, and prior thereto, the owner in fee and in possession of a tract of land situated in Carteret County, upon which was standing, growing and lying certain timber trees.

2. That prior to the institution of this action the plaintiff, Alonzo Thomas, entered into a contract with the Newport Lumber and Manufacturing Company, by which plaintiff sold to said company, at $4.50 per thousand feet (to be paid when said trees had been cut into logs and measured, and before said logs had been removed from the land), such of said trees, in specified dimensions, as the Newport Lumber and Manufacturing Company should cut or cause to be cut into logs.

3. That after the making of the contract aforesaid between plaintiff and the Newport Lumber and Manufacturing Company, the latter company contracted with the defendant Merrill for the cutting, hauling and rafting of the logs after said trees had been felled, and under said contract defendant Merrill was to receive from said Newport Lumber and Manufacturing Company the amount of $4.50 per thousand feet.

4. Thereafter, and pursuant to the contract, defendant Merrill did cut, haul and raft certain logs, which are the subject-matter of this action. That the Newport Lumber and Manufacturing Company failed to pay the plaintiff Thomas the sum of $4.50 per thousand feet for the logs, or any part of same, and failed to pay to defendant Merrill the amount due him by said Newport Lumber and Manufacturing Company for the cutting, hauling and rafting of the logs. Then the plaintiff instituted this action to recover possession of the logs and sued out a writ of claim and delivery for the same against this defendant, the Newport Lumber and Manufacturing Company having theretofore notified the plaintiff Thomas that it would not pay for the said timber logs and that it had abandoned its rights under the contract. That under said writ of claim and delivery the sheriff of Carteret County took from the possession of the defendant Merrill, and delivered into the possession of the plaintiff Thomas, 470 logs, containing approximately 34,000 feet log measure, which, when so taken into the custody of the sheriff, were worth the sum of $370.

5. That the amount due the defendant Merrill by the Newport Lumber and Manufacturing Company upon his contract for cutting, hauling and rafting the logs is $156.81, and that this sum the Newport Lumber and Manufacturing Company has failed to pay.

6. When logs were taken from defendant, they were in rafts in Ware Creek.

Upon the foregoing facts the court is of opinion, and so finds:

1. That the plaintiff Thomas is the owner and entitled to the possession of the timber logs until he has been paid from the proceeds of the sale of the same the amount of $4.50 per thousand feet, pursuant to the contract between him and the Newport Lumber and Manufacturing Company, with interest from 9 September, 1913, together with the costs of this action, as taxed by the clerk of this court, towit, $17.90.

2. After that sum has been paid to the plaintiff Thomas, the defendant Merrill is entitled to be paid from the proceeds of the sale of the logs, under his contract with the Newport Lumber and Manufacturing Company, the sum of $156.81, with interest from the date of the seizure by the sheriff.

3. If any balance is left, after the payment of the amount set forth in the first two conclusions above, the plaintiff Thomas is entitled to

retain the same, since the Newport Lumber and Manufacturing Company, prior to this action, abandoned any claim to the timber logs under the contract with the plaintiff. It further appearing to the court that the logs cannot now be found for sale, the plaintiff Thomas is liable to account with defendant to the value of the said logs at time of seizure, towit, $370.

It is therefore adjudged that defendant recover of plaintiff the sum of $156.81, with interest from 9 September, 1913, and that Thomas retain the balance as the owner of the same.

GEORGE W. CONNOR,
*Judge Presiding.*

*Julian F. Duncan for plaintiff.*
*Abernethy & Davis for defendant.*

WALKER, J., after stating the case: We are unable to see why the conclusion of *Judge Connor,* upon the facts stated, was not correct. The plaintiff was entitled to be paid by the Newport Lumber and Manufacturing Company the price of the timber, and conceding, for the sake of the discussion, that it could seize the logs for the purpose of securing the payment of this debt, it was, nevertheless, under an obligation to hold the logs for the defendant Merrill's benefit as well as its own, if he had a lien on them for work and labor performed by him for the Newport Lumber and Manufacturing Company in the cutting, hauling and rafting of the logs. This must be so, as it appears that the logs, when taken under the writ sued out at the instance of the plaintiff, were worth enough to pay both claims. The fact that plaintiff lost the possession of the logs and cannot recover the same for the purpose of selling and converting them into money to pay the debts cannot be allowed to prejudice the defendant Merrill, as it was not his fault that they have been lost, or cannot now be found, but was solely and entirely the fault of the plaintiff. Nor can the fact that the Newport Lumber and Manufacturing Company has abandoned its rights under the contract with plaintiff have any prejudicial effect upon the claim of defendant Merrill against it. The company, even with the approval of the plaintiff, cannot deprive him of any right he may have, with respect to the logs, without his binding consent.

The next question is, whether Merrill has any lien on the logs under his contract with the company. We have assumed that his lien, if he has any, is subordinate to that of the plaintiff for the purchase money of the timber, as defendant Merrill has not appealed, and must be understood as not disputing this proposition. Nor need we pass upon it, for another reason, namely, that the value of the logs which have passed into the hands of the plaintiff, or of which, in law, he received the

40—169

benefit, is more than sufficient to cover the amount of both claims. The case, therefore, is practically confined to the question of defendant's lien. Under the contract between the company and the plaintiff, the title to the timber passed .to the former, subject to plaintiff's lien for the purchase money, if he had one. The contract contemplated that the timber should be cut and made into logs, which were to be "rafted and hauled" to Ware Creek, where the plaintiff caused them. to be seized, under legal process, while they were in the possession of defendant.

It is not necessary for us to decide whether Merrill had a common-law lien on these logs. That feature of the question is treated to some extent in 25 Cyc., 1580, 1581, and notes. Jones, in his work on Liens (2 Ed.), sec. 702, says that, at common law, laborers engaged in cutting, hauling and driving timber had no lien thereon, and, therefore, can assert none, except by statute or special contract, as it is indispensable to the continuance of such a lien at the common law that the party claiming it should have the possession of the article of property upon which it rests, and a laborer generally works under a contractor, and consequently cannot retain the possession, because he holds possession of the thing for the contractor, and, in law, his possession is not his own, but that of the contractor, as against the owner, implying that if he contracts directly with the owner, in his own behalf, and cut the timber into logs, he will have a lien thereon; and in the next section (703) he says: "One who has cut and hauled to his mill a quantity of timber from the land of another, under a contract with him, has a lien at common law for his labor upon the lumber in his possession remaining manufactured from the timber, and also upon the logs unsawed. In like manner one who saws the logs of another into lumber and shingles has a common-law lien thereon for the value of such work," citing *Palmer v. Tucker,* 45 Me., 316; *Arians v. Brickley,* 65 Wis., 26 (56 Am. Rep., 611). But we can decide this case without expressing any opinion upon the legal merits of the doctrine thus stated by that writer, as we think that the defendant, Carvey A. Merrill, had a lien on the logs under our statute. His personal labor and skill were bestowed directly in cutting and shaping the timber into logs. The trees were felled and converted, in accordance with the terms of the contract between the principals, into logs, that being the object of making the agreement for the cutting of the timber.

By Public Laws of 1913, ch. 150, sec. 6 (Gregory's Supplement, sec. 2023-a), it is enacted that "Every person doing the work of cutting and sawing logs into lumber, getting out wood pulp, acid wood, or tan-bark, shall have a lien upon the lumber for the amount of wages due them, and such liens shall have priority over all other claims or liens upon said lumber except as against a purchaser for full value and .without

notice thereof." Provision then follows for making the lien effective and giving notice, if the owner be found, by posting it on the pile of wood, lumber or other articles, and when this is done, subsequent purchasers of it take subject to the rights of the lienor. In *Glazener v. Lumber Co.,* 167 N. C., 676, it was held by a divided Court that even under the act of 1913 the work must have been done directly by the claimant in betterment of the property upon which the lien is alleged to rest, and that Hogsed, who aided in making the lumber by taking the boards from the saw as they were cut, was entitled to a lien, but that Glazener, who was employed in the blacksmith shop as repairer of cars used as part of the plant, and Fisher, who worked on the car track and repaired the bridges, were not so entitled. *Justice Hoke* and the writer dissented from this view, holding that it was all one common enterprise, each of the employees contributing his share in work or labor to the general result of converting the lumber into boards, and that it made no difference whether he stood at or near the saw or was otherwise directly engaged in operating it or in feeding the logs to it, or in removing them from the saw frame after they had been cut, and that the act of 1913, ch. 150, was passed to prevent the application of that principle, as settled by former adjudications of this Court (*Tedder v. Railroad Co.,* 124 N. C., 342), to such a case. But, however that may be, in this case the work of cutting, hauling and rafting the logs was done directly for the betterment of the property, and not remotely and collaterally, as held in the *Glazener case,* and it is therefore not governed by the principle of that decision, as contended before us.

This case comes well within the meaning and remedy of our statute, Revisal, sec. 2017, as to liens of a mechanic or artisan on any article of personal property, for any just or reasonable sum due to him by the owner thereof, where he has made, altered or repaired it at the request of the owner or legal possessor thereof. It will be observed that Merrill's contract was to cut, haul and raft the logs after the trees had been felled or severed from the freehold and became personal property. *Ives v. Railroad,* 142 N. C., 131, where it was held that a contract for the cutting of standing trees and the conversion of them into cordwood related to personal property and was not within the statute of frauds, requiring contracts affecting real property to be in writing. It is true, therefore, and *a fortiori,* that where the contract refers to trees already cut down, it affects personal property only.

This brings the case within the terms and intent of Revisal, sec. 2017 (*Huntsman v. Lumber Co.,* 122 N. C., 583), as Merrill had not parted with the possession when the logs were seized by the sheriff under the writ issued at plaintiff's request. *McDougall v. Crapon,* 95 N. C., 292; *Block v. Dowd,* 120 N. C., 402; *Tedder v. Railroad Co., supra.* But

Revisal, sec. 2016, provides as follows: "Every building built, rebuilt, repaired, or improved, together with the necessary lots on which such buildings may be situated, and every lot, farm, or vessel, *or any kind of property not herein enumerated,* shall be subject to a lien for the payment of all debts contracted for work done on the same or material furnished." And this language, especially the words italicized by us, are comprehensive enough to include the case presented by the facts as they appear in the record, but it may be that Merrill cannot avail himself of that section, as he has taken no proceedings to enforce his lien under it and Revisal, section 2026, if such be required where the property partakes of the nature of personalty. We think, though, that his right is clear under section 2017, and we are disposed to rule that he has also a lien at common law, according to the authorities, the property being personal. It would be a strange *casus omissus,* if the law has created a lien in almost every imaginable case where labor is performed, and has failed to provide for a case so meritorious as this one.

It is not altogether certain whether, under this contract, when fairly construed, any lien was given to the plaintiff, or whether the obligation to pay $4.50 per thousand feet was a personal one merely; but we will not pass upon this question, as it is not necessary to our decision of the case, and it is of too serious a character to be considered and foreclosed without due deliberation, nor until we are called upon to do so by the exigency of the case.

There was no error in the judgment of the court upon the case stated. Affirmed.