ED GRAVES AND JOHN McDONALD v. ROLIN DOCKERY,
N. W. MINTZ AND JOHN A. TATHAM.

(Filed 27 January, 1931.)

**Logs and Logging B c—Before amendment of 1929 one hauling lumber to mill under contract held not entitled to lien under C. S., 2436.**

Under the provision of C. S., 2436, prior to the amendment of 1929, persons who cut and log timber to a mill under a contract to do so at a fixed price are not entitled to a lien for such services in an action wherein it appears that the logs were seized on the premises of a railroad company, this interpretation of C. S., 2436, being strengthened by the fact that the amendment of 1929 included within the meaning of the statute those who were engaged in logging to the mill.

CIVIL ACTION, before *Johnson, Special Judge,* at June Term, 1930, of CHEROKEE.

On or about 7 August, 1928, Ed Graves and John McDonald and Will Garrett made a contract with the defendants, Rolin Dockery and N. W. Mintz, according to the terms of which the plaintiffs "agreed to cut and log the timber belonging to said Dockery and Mintz on Anderson Branch on Wiggins Mill Creek in Graham County, at and for $10.00 per thousand feet. It was further agreed that if any one should stop logging, he forfeited to his partners any unpaid balance due

him." Payments for logging were to be made by John A. Tatham upon monthly statements furnished by Dockery and Mintz. Thereafter Garrett withdrew from the logging operations and the plaintiffs succeeded to his interest. The plaintiffs proceeded with the work until about 1 October, 1928. They allege that about said date the defendants, Dockery and Mintz, breached the contract by failing and refusing to pay plaintiffs for work already done, and Tatham also declined to pay plaintiffs any further sums "for and on account of said Dockery and Mintz." Plaintiffs further allege that by reason of said breach they were unable to go on with the work under the contract. The plaintiffs further allege that there were other dealings between the parties and that as a result of all the transactions there was due them the sum of $578.75 "for logging and labor."

On 3 December, 1928, plaintiffs filed a lien for $578.75 "on all the lumber cut from the lands on Wiggins Mill Creek—being about 50,000 feet of lumber on the yard at the railroad siding at Sweet Gum." Plaintiffs allege that thereafter the defendant, John A. Tatham, with notice of plaintiffs' right and lien, removed or caused to be removed a large quantity of said lumber covered by plaintiffs' lien, and converted the same to his own use. Answers were filed by Mintz and Dockery and by Tatham. Thereafter, on 16 June, 1930, the Sterling Lumber Company filed an interplea claiming that it had purchased the lumber on which the lien was filed, prior to 16 September, 1928. The cause came on for trial and judgment was entered "that the plaintiffs are not entitled to a lien on the property described in the complaint or in the lien recorded in the lien docket of Graham County," from which judgment the plaintiffs appealed.

*M. W. Bell for plaintiffs.*
*L. B. Prince for Sterling Lumber Company.*

BROGDEN, J. The only assignment of error contained in the record is the ruling made by the trial judge "that plaintiffs were not entitled to a lien on the property described in the complaint or in the lien." Therefore, the question of law arising is whether prior to chapter 69, Public Laws 1929, a person cutting and hauling logs to a mill can thereafter acquire a lien upon the lumber by virtue of C. S., 2436.

C. S., 2436, provides a lien upon lumber for "every person doing the work of cutting or sawing logs into lumber," etc. This statute was construed in *Glazener v. Lumber Co.,* 167 N. C., 676, 83 S. E., 696, and the companion case of *Hogsed v. Lumber Co.,* 170 N. C., 529, 87 S. E., 337. In the *Hogsed case* the Court said: "But we do not think that under the description 'doing the work of cutting or sawing logs into

lumber' will fall those described as engaged on the train hauling logs, such as the engineer on the log train, the trimmerman, the dogger on carriage (unless this means on the saw carriage, in which case he would be engaged in cutting), fireman on the log train, conductor and brakeman on the same, and others engaged in bringing logs to the mill to be thereafter sawed into plank by those engaged in that service. The men engaged in working on the log train in any capacity, the night watchman, and all connected with the repairs to the machinery, or running the log train or bringing in the logs, cannot be said to come within the description, 'engaged in the work of cutting or sawing logs into lumber,' as defined by us in *Glazener v. Lumber Co.,* 167 N. C., 676."

While it was held in *Thomas v. Merrill,* 169 N. C., 623, 86 S. E., 593, that the plaintiff in that case had a lien under the statute, it is to be noted that the logs which were the subject of the controversy, were still in the possession of the plaintiff. Indeed, the dissenting opinions in *Glazener v. Lumber Co., supra,* recognized that a strict construction had been put upon the statute by the Court, and *Hoke, J.,* dissenting, said: "To my mind, it is not the correct nor permissible construction of this statute to restrict its operation to laborers who work at or with the saws." It is, therefore, obvious, that the Court intended to confine the benefit of the lien to those who were directly or indirectly engaged in sawing, moving, and stacking the lumber or doing acts connected with the sawing operation.

Recognizing the narrow construction put upon the statute, the General Assembly by Public Laws of 1929, chapter 69, included within the benefit of a lien those who were engaged in logging the mill. This legislative enactment constitutes strong proof of the fact that those who were therefore engaged in logging, did not come within the purview of C. S., 2436. However, this case arose before the act of 1929, and must be governed by the law existing at the time.

We are therefore constrained to hold that the judgment was correct. No error.