## ELK CREEK LUMBER CO. v. HAMBY
### et al.
### No. 4013.

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

Mark Squires and W. H. Strickland, both of Lenoir, N. C. (C. G. Gilreath, of Wilkesboro, N. C., on the brief), for appellant.

Eugene Trivette, of Boone, N. C. (A. H. Casey, of North Wilkesboro, N. C., and Trivette & Holshouser, of Boone, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted to foreclose the equities in a contract for

the sale of land and timber, and to enjoin interference with plaintiff's possession of lumber claimed under the provisions of that contract. Certain persons claiming the lumber by reason of laborers' liens and sales under execution made for the enforcement of same were made parties defendant in the suit; and from a decree in their behalf plaintiff has appealed.

Plaintiff is a lumber company owning a tract of timber land in Wilkes county, N. C., which on March 17, 1934, it contracted in writing to sell to one Hill Hamby for the sum of $7,500; $300 of this amount was to be paid in cash and the remainder in installments, deferred payments to be evidenced by promissory notes and to bear interest. It was provided that so long as the purchaser should not be in default under the contract, he should have the right to cut any timber on the land, but should pay on the amount due under the contract a specified rate upon the timber so cut before removing from the land any of the lumber which had been sawed from it. Title to lumber cut was to remain in the lumber company until paid for under the above provision, and it was provided that all payments received from the sale thereof should be applied on the balance remaining due on the purchase price under the contract. It was provided that upon default by the purchaser, (a) all payments made by him should be retained until default had been remedied, (b) all lumber and other products cut by the purchaser might be sold by plaintiff and the amount realized therefrom applied on the amount due under the contract, and (c) plaintiff might cancel the contract, and thereupon the purchaser would have no further interest in the premises. The contract was not recorded until October 26, 1934.

The purchaser entered into possession under this contract and began cutting the timber into lumber. He made the initial cash payment and paid a part of the first installment of $1,000 which fell due in June 1934, but was unable to pay the remainder, and thereupon it was agreed between him and the agent of plaintiff that he should sell the crossties to be cut from the land and use the proceeds for the cost of operations, and that the agent of plaintiff should sell the lumber and apply the proceeds thereof on the amount due under the contract. In October, 1934, plaintiff's agent stopped the operations of the purchaser under this agreement for the reason that he was already in default and the price of crossties had declined to such an extent that it was apparent that he would not be able to proceed further. At that time there was a considerable quantity of lumber on the premises which plaintiff claimed under the provisions of the contract of sale as security for the amount due thereunder; and it is this lumber which is in controversy in the appeal before us. Shortly after plaintiff caused the purchaser to suspend operations, it commenced a suit against him, and in the complaint filed therein exercised the right of cancellation given by the contract.

The lumber which was in the possession of the purchaser at the time that operations under the contract were suspended had been manufactured under contracts between him, on the one hand, and the defendants Watson and McNeill, D. F. Sheppard, and Coy Eller, on the other. By the terms of these contracts Watson and McNeill were to fell timber at $1 per thousand feet, Sheppard was to do the logging and sawing at $6 per thousand, and Coy Eller was to take the lumber from the saw and hack it, at from $1 to $1.50 per thousand. These defendants claimed liens on the lumber in possession of the purchaser for the amounts due them under their respective contracts; and Sheppard filed notice of lien in the office of the clerk of the superior court of Wilkes county, and the others with one Rufus Church, a justice of the peace of that county. Sheppard's notice and claim of lien was filed October 31, 1934, and asked $1,134.81 for logging and sawing between April 20, 1934, and October 13, 1934. Watson and McNeill filed their notice and claim on November 1, 1934, and asked $197.30 for labor performed between March 23, 1934, and October 13, 1934. Coy Eller filed his notice and claim November 3, 1934, and asked $158.41 for labor performed between July 10, 1934, and October 20, 1934. None of these notices and claims of lien stated the number of days labor performed or the price per day; and none of them showed what part of the claim was for the thirty days' labor last performed. Actions were instituted and judgments were obtained against the purchaser Hamby on the notices and claims thus filed, but plaintiff was not made a party to these actions. Executions were issued on the judgments obtained; and the lumber on which the liens

were asserted was sold under these executions to the lien claimants. The question on this appeal is whether these execution sales conveyed to the lien claimants title to the lumber good against the claim of plaintiff under its contract. We do not think that it did.

■ We agree with the learned judge below that the reservation of title to lumber cut under the contract until the amount due thereunder should be paid created what was in effect a chattel mortgage on such lumber in favor of the plaintiff, and that under the North Carolina registration law, this mortgage, until it was registered, was voidable as against the claims of creditors and purchasers. John Hetherington & Sons v. Rudisill (C.C.A.4th) 28 F.(2d) 713, 62 A.L.R. 377; Harris v. S. A. L. Ry. Co., 190 N.C. 480, 130 S.E. 319, 49 A.L.R. 1452; Brem v. Lockhart, 93 N.C. 191. But, as pointed out by Judge Conner, the author of the registration law, creditors within the meaning of that statute are creditors who have perfected some lien upon the property, by seizure under legal process or otherwise. National Bank of Goldsboro v. Hill (D.C.) 226 F. 102, 115. And, as the executions under which the lumber was sold were not issued until after the registration of the contract retaining a lien upon it, the defendants can ground no rights upon the levy and sale under these executions. Their right to take precedence over the rights of plaintiff under its recorded contract is dependent, therefore, upon the validity of the laborers' liens which they attempted to perfect, and which formed the basis of the actions in which the executions were issued.

■ As indicated above, all three of the notices of lien were filed within thirty days of the completion of the labor for which the liens were asserted; and, although we do not decide the point, we may assume that, if valid liens were perfected by the notices, they would take priority over the lien reserved in the contract of plaintiff, even though the latter was recorded before they were filed. We do not think, however, that the validity of the liens can be sustained. The statute under which they were filed, Code § 2436, provides: "Every person doing the work of logging, or of cutting, or sawing logs into lumber, getting out wood pulp, acid wood or tan bark, has a lien upon the said logs or lumber for the amount of wages due them, and the said lien shall have priority over all other claims or liens upon said lumber, except as against a purchaser for full value and without notice thereof: Provided, any such laborer whose wages for thirty or less number of days performed are due and unpaid shall file notice of such claim before the nearest justice of the peace in the county in which said work has been done, stating the number of days of labor performed, the price per day, and the place where the lumber is situate, and the person for whom said labor was performed, which said statement shall be signed by the said laborer or his attorney, and the said laborer shall also give to the owner thereof, within five days after the lien has been filed with the justice of the peace, as aforesaid, a copy of said notice as filed with the said justice of the peace. If the owner cannot be located, then notice shall be given by attaching said notice on the logs or lumber, wood pulp, acid wood or tan bark upon which the labor sued for was performed, and any person buying said lumber or logs, wood pulp, acid wood or tan bark after such notice has been filed with the nearest justice of the peace, shall be deemed to have bought the same with notice thereof, but no action shall be maintained against the owner of said logs or lumber, wood pulp, acid wood or tan bark or the purchaser thereof under the provisions of this section unless same is commenced within thirty days after notice is filed with the justice of the peace by such laborer, as above provided."

This statute gives to laborers engaged in logging, sawing, etc., a lien on the lumber of their manufacture, which is superior to all other claims thereon, except that of a purchaser for value without notice. It gives this preferred lien, however, only for the wages of not exceeding thirty days labor, and only on condition that the provisions of the statute be strictly complied with. Bryson & Bryson v. Gennett Lumber Co., 171 N.C. 700, 89 S.E. 26. Even if the doubtful assumption be made that the statute protects those who do cutting, logging, sawing, and hacking under contract, as distinguished from laborers working for wages, it is clear that lien may be asserted only for the amount due for work done in not exceeding a period of thirty days. Here all three of the notices covered work done over a period of three months or more, and there was nothing to show what part of the claim was for work done within the

last thirty days of that period. Such notices could not create a lien under the statute.

We have given consideration to the other lien statutes of North Carolina; and under none of them can the priority of the lien claimants over the reservation of title contained in the contract be sustained. The lien provided for by section 2435 of the Code is dependent upon possession, which the lien claimants do not claim to have had. Thomas v. Merrill, 169 N.C. 623, 86 S.E. 593; McDougall v. Crapon, 95 N.C. 292. While section 2433 provides for a lien not only upon buildings and lots, but also upon "any kind of property, real or personal," other sections of the lien law provide the conditions upon which the lien is to come into existence and continue (McDougall v. Crapon, supra); and in case of personal property the lien is dependent upon possession and cannot be obtained by the filing of notice. Tedder v. W. & W. R. Co., 124 N.C. 342, 32 S.E. 714; Glazener v. Lumber Co., 167 N.C. 676, 83 S.E. 696 at page.698; McDougall v. Crapon, supra; Thomas v. Merrill, supra. It was because a lien could not be obtained for labor performed in the manufacture of lumber unless the party claiming it retained possession, that the Legislature enacted chapter 150 of the Laws of 1913, as amended, now section 2436 of the Code. See dissenting opinion of Judge Hoke in Glazener v. Lumber Co., supra.

Under the statutes of North Carolina a contractor or laborer who engages in the manufacture of lumber has a lien thereon under section 2435, for his just and reasonable charges so long as he retains possession of the lumber. A laborer, even though he does not retain possession, is entitled to a lien for wages for not exceeding thirty days if he gives the notice required by section 2436 and otherwise complies with that section. But he obtains no lien unless he complies with section 2436, or unless he retains possession so that he may assert a lien under 2435.

And the position of claimants is not helped by reason of the fact that judgments were rendered establishing the liens in actions instituted for that purpose. Plaintiff was not a party to those actions; and its rights in property could not be affected by proceedings to which it was not a party. The lien as adjudged therein was good as against Hamby who was made a defend-

ant, but could not affect the rights of plaintiff. Even if the proceedings to enforce the lien be regarded as in rem or quasi in rem, due process necessary to divesting plaintiff's rights in the property required that it be made a party by either actual or constructive service. Bernhardt v. Brown, 118 N.C. 700, 24 S.E. 527, 715, 36 L.R.A. 402. This not having been done, the case stands, so far as plaintiff is concerned, just as though the judgments in these proceedings had not been entered. Case Mfg. Co. v. Smith (C.C.) 40 F. 339, 5 L.R.A. 231; Williams v. Chapman, 17 Ill. 423, 65 Am. Dec. 669; Whitney v. Higgins, 10 Cal. 547, 70 Am.Dec. 748; note Ann.Cas.1918B, at p. 19; 18 R.C.L. 983.

And we see no basis for holding that plaintiff is estopped from asserting a lien under its contract by reason of the agreement of its agent that the purchaser might use the proceeds of crossties cut to enable him to proceed with his operations, or by reason of the fact that the agent knew that the purchaser was having work done by the defendant lien claimants. No crossties are involved in the controversy; and there is nothing in the agreement which waives any of plaintiff's rights with respect to the lumber. On the contrary, the agreement was that the lumber cut was to be sold by plaintiff's agent and the proceeds applied on the amount due under the contract. The fact that plaintiff's agent may have known that the purchaser was having the lumber cut by the defendants who are here asserting liens is not significant. It does not appear that the agent did anything to lead them to suppose that plaintiff would waive any rights under its contract.

And we cannot see how any rights accrue to defendants as a result of the cancellation by plaintiff of the purchaser's rights under the contract. This cancellation would not, of course, cut off any rights that the purchaser or his creditors might have in the proceeds of the lumber in excess of any amount necessary to pay the balance due under the contract, if upon foreclosure it should be found that there is such excess. But, on the other hand, the fact that plaintiff elected to exercise this right, would not preclude it from asserting the lien on the lumber which the contract clearly gave it for the balance due.

For the reasons stated, the decree appealed from will be reversed.

Reversed.