NEBRASKA MACHINERY COMPANY, a corporation,

*Plaintiff and Respondent*

vs.

SCHOENHEIT TRUCKING COMPANY, LLOYD SCHOENHEIT and GEAN SCHOENHEIT or GENE SCHOENHEIT, the first name of said SCHOENHEIT being known,

*Defendants and Appellants.*

(No. 2732; September 18th, 1956; 301 Pac. (2d) 555)

For the defendants and appellants the cause was submitted upon the brief of Cuba Y. Hollaway of Newcastle, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Raymond, Guthrie & Raymond of Newcastle, Wyoming.

144

## OPINION

This is an action brought by plaintiff Nebraska Machinery Company against Schoenheit Trucking Company to replevin a tractor, hereinafter for convenience called tractor B. The action was commenced on June 19, 1954. Judgment was entered for plaintiff for the possession of the tractor and damages for withholding it in the sum of $880.

On April 15, 1954, the plaintiff leased to Lawrence Bass two different caterpillar tractors, hereinafter called tractors A and B respectively, as they were in the court below. There is a good deal of confusion in the testimony as to which tractor was "A" and which was "B", but the matter finally became reasonably clear. The lease agreement was duly filed in Weston county, Wyoming, into which county Bass took the

tractors. Bass employed the defendant in this case to haul the tractors from one oil field to others. That was during the month of May 1954. For thus transporting these tractors the defendant Schoenheit Trucking Company claims a lien on the tractors in the sum of $976.60.

It seems Bass abandoned the tractors in the latter part of May or or the early part of June 1954, and apparently left the country. Thereupon the plaintiff felt it should repossess the tractors. It doubtless had a right to do so under the circumstances. See 77 C.J.S. § 45, p. 33. Plaintiff began inquiring about the tractors on or about June 4, 1954, and at that time found one of the tractors, namely tractor A, in the yard of the defendant at Newcastle, Wyoming. The other tractor, namely tractor B, was then in the neighborhood of Black Thunder River, and plaintiff asked the defendant to haul it into Newcastle. That was done, and this tractor was also placed in the defendant's yard. For this service the defendant billed the plaintiff, and was paid by the latter without, however, paying for the services rendered by defendant in hauling the tractors for Bass.

On or about June 12, 1954, the plaintiff asked the defendant to release the tractors, but the latter refused to do so unless the charges against Bass were paid. A formal demand for the tractors was made on June 16, 1954, and the demand refused unless the lien claimed by defendant was paid. Soon thereafter and before the replevin action was instituted, the defendant released tractor A, stating that it would hold tractor B to satisfy the claim against both tractors. Thereafter this replevin action was instituted to recover tractor B.

## 1. Lien for Hauling Tractor.

As already stated, the defendant claims a lien on the tractors for transporting them in the field, and claims that lien under § 55-501 W.C.S. 1945 and subsequent sections.

Section 55-501 provides:

"Any person, firm or corporation who shall transport alter, repair or bestow labor upon or store and keep any motor vehicle, shall have a lien upon said motor vehicle for his or its reasonable charges for labor performed or materials furnished and used in making such repairs, and for keeping, transporting and storing said motor vehicle."

Section 55-503 provides:

"If any charges for which lien is given by the Act (§§ 55-501—55-506) be not paid within sixty (60) days after the same become due and payable, the person to whom such lien is given, and who has possession of said motor vehicle upon which said lien is claimed, shall sell the same in the manner hereinafter provided."

Counsel for the defendant claims that a caterpillar tractor is a motor vehicle within the meaning of the foregoing statute, and he relies upon the following sections of the statutes. Section 60-1302 W.C.S. 1945 provides:

"(k) Motor Vehicle. A vehicle propelled by any force other than muscular."
Section 60-101 provides:

"(1) 'Motor vehicle' shall include all vehicles propelled other than by muscular power, operated upon public highways, except trailers, vehicles run upon stationary rails or tracks, and road rollers or vehicles used exclusively for propelling farm machinery."
* * *

"(6) 'Tractor' shall include all motor propelled vehicles commonly known as tractors or tractor engines, whether traveling on wheels or on caterpillar treads."

While these statutes appear to sustain the contention of defendant, counsel for plaintiff claim these provisions merely say that the meaning given to motor vehicle is within the intent of the act of the legislature; that common sense dictates that a tractor is not a motor vehicle, and that it is absurd to call it so. Of course, when we think of motor vehicles, we ordinally think of automobiles, trucks and buses. But that is because these are the main motor vehicles. We are living in a time when we think of gasoline propelled vehicles. We have passed the horse and buggy age. A tractor is more nearly a motor vehicle than a horse and buggy. It is moved by power generated by gasoline ,not by muscular power. It is not feasible to move it a great distance by its own power, but it may be thus moved a short distance, as shown by the testimony. Give it time, it would move many miles under its own power. We have, of course, no definite way of knowing what the legislature had in mind when it created the motor vehicle lien. We do not have the advantage of consulting anything like the reports made in connection with the Acts of Congress. So we must find the intention of the legislature in the best way we can. Counsel, as stated, say it is absurd to call a tractor a motor vehicle. But that does not help us.

A part of our statute has been overlooked by counsel of both sides and by the trial court. The motor vehicle lien statute creating a lien, here in controversy, was enacted by the legislature in 1945, as shown by chapter 102 of the legislative acts of that session. The act was approved by the governor on February 20, 1945. On the previous day, namely, February 19, 1945, the governor approved the enactment of chapter 86 of the

session laws of that year (§ 60-801 W.C.S. 1945). By that chapter, th legislature provided that for the purpose of the act the following term should be construed as follows:

"(a) Motor Vehicle. Any machine, tractor bus, truck or truck-tractor propelled by mechanical power."
That provision expressly embraces tractors. We think it is not a violent presumption that when the legislature enacted two statutes on practically the same day, the meaning attributed to motor vehicle in one of these statutes was also intended to be attributed to that term in the other statutes. Apparently the legislature wanted to give a contract carrier the same privilege so far as transportation is concerned as it already had given to common carriers. See § 55-112 W.C.S. 1945.

The foregoing statutes, here mentioned, give the only clue as to the intention of the legislature. We think we are constrained to hold that a contract carrier, such as the defendant, is entitled to a lien for transporting a tractor just as a common carrier would be.

The following authorities agree, we think, that a tractor is properly considered to be a motor vehicle: State v. Cedar Grove Refining Co., 178 La. 810, 152 So. 531; State v. Louisiana Oil Corporation, 174 Miss. 585, 165 So. 423; Gibbs v. Mayo, Fla., 81 So.2d 739; Johnson v. Bergquist, 184 Minn. 576, 239 N.W. 772; 60 C.J.S. p. 109. We might add incidentally that we are not passing on a situation involving a mortage or conditional sale contract.

2. Filing Lien for Record.

Section 55-502 W.C.S. 1945 provides for filing the lien claim in the office of the county clerk of the county in which the motor vehicle is located. Counsel for plaintiff mentions the fact that counsel for defendant

has not made any reference thereto. However, the statute merely provides that the claimant may file the lien claim, but not until sixty days have expired from the date of the accrual of the indebtedness. It is not compulsory to so file the claim, and the absence of filing does not affect the lien if othewise preserved. See 53 C.J.S. § 6, p. 850.

3. Extent of Lien.

It is readily admitted by counsel for the defendant that the lien which the defendant had was only a possessory lien; that is to say a lien which was valid only so long as the defendant kept posession, unless perchance the lien were filed in the office of the county clerk. This court stated in the case of Turner v. Horton, 18 Wyo. 281, 293, 106 P. 688, 690, as follows:

"A lien in its proper legal sense is said to import that one is in possession of the property of another, and that he detains it as security for some demand which he has in respect of it, and hence it implies possession by the creditor, title in the debtor, and a debt arising out of the specific property. 1 Jones on Liens, 2d Ed., § 20. * * * Its continuance depended upon possession, and, whenever the possession, was voluntarily surrended, the lien was lost. Oakes v .Moore, 24 Me. 214, 41 Am.Dec. 379; Arians v. Brickley, 65 Wis. 26, 26 N.W. 188, 56 Am.Rep. 611.

"Our statutes have extended the lien to persons not entitled to it at common law, such as agisters and livery stable keepers ,but it is generally held that statutes of that character are to be construed in accordance with the principles controlling the lien at common law. 1 Jones on Liens, 2d Ed., § 749. Hence, unless the statute either expressly or by clear implication provides to the contrary, possession is essential to the existence and preservation of the lien. It was so held by this court with reference to the lien of an agister under the statute, and it was said that, 'the lien being founded upon possession, it must ordinarily cease when the

possession ceases. If one voluntarily parts with the possession of the property, the lien is thereby lost.' Fein v. Wyo. Loan & Trust Co., 3 Wyo. 332, 22 P. 1150."

See also 53 C.J.S. § 8, p. 853.

It is accordingly clear that if possession is voluntarily relinquished the lien is lost. The record herein shows that possession of tractor A was voluntarily relinquished, hence so far as that tractor is concerned, the lien thereon was lost. We know of no rule whereby such a lien can be relinquished on one piece of property on which a lien exists and transferred to another piece of property. Furthermore the charge for transportation of the tractors is shown by five different bills rendered by the defendant. In three of these bills it does not appear which one of the tractors was transported . Mr. Schoenheit, the defendant's manager, did not know which of the tractors was so transported. He stated at different times that he did not know

"which was which." The burden to prove charges was on the defendant, and hence there was a total failure of proof on three of these items charged. Schoenheit testified that both of the tractors were transported on May 12, 1954, the charge being the sum of $216.30. Judging from the amount charged that seems to be correct. The last bill rendered for May 24 and 25, shows that both of the tractors were transported, the charge being $331.55. The two items combined amount to $547.85. Since the lien on tractor A was voluntarily relinquished, the plaintiff cannot be charged for more than half of the foregoing amount, namely $273.92.

The judgment of the court is accordingly reversed with direction to cancel the judgment in favor of the plaintiff and against the defendant, and with the further direction to enter judgment in favor of the de-

fendant, Schoenheit Trucking Company, and against the plaintiff for $273.92 with interest.

Reversed with instructions.

Harnsberger, J., and Parker, J., concur.