**ROCKY MOUNTAIN TURBINES, INC., Appellant (Defendant),**

**Wyoming Central Aero-Ways, Inc., Appellant (Intervenor),**

v.

**The 660 SYNDICATE, INC., Appellee (Plaintiff).**

No. 5368.

Supreme Court of Wyoming.

Feb. 4, 1981.

Donald R. Winship of Winship & Feeney, P. C., Casper, for appellants.

Barry G. Williams of Williams, Porter, Day & Neville, P. C., Casper, for appellee.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellee-plaintiff brought a replevin action against appellant-defendant Rocky Mountain Turbines, Inc. (hereinafter referred to as Rocky Mountain) to obtain possession of a DeHavilland Twin Otter aircraft (hereinafter referred to as aircraft) and for damages incurred as a result of unlawful possession of the aircraft by Rocky Mountain. Rocky Mountain filed an answer and counterclaim, the counterclaim

being later amended, in which it: (1) requested foreclosure of a mechanic's lien held by it on the aircraft; (2) alleged entitlement to storage charges; and (3) requested payment for repairs made to the aircraft which allegedly unjustly enriched appellee. Appellant-intervenor Wyoming Central Aero-Ways, Inc. (hereinafter referred to as Central) also requested payment for repairs made to the aircraft which allegedly unjustly enriched appellee.

Appellee leased the aircraft to Wyoming Airlines Limited (hereinafter referred to as Wyoming Airlines) on September 26, 1978 but it terminated the lease on March 19, 1979 for default in rental payments by Wyoming Airlines. The lease provided for monthly rentals of $15,000 and for $35 per hour flown for engine depreciation. Wyoming Airlines was to pay all costs of maintenance, operation, registration and other charges. Appellee was to replace the engine when it "timed out." The repairs performed on the aircraft by Rocky Mountain and by Central were performed during the period of lease to Wyoming Airlines at Wyoming Airlines' request. The lease was signed on behalf of Wyoming Airlines by its president, who was also an officer and stockholder of Rocky Mountain and a part owner of Central.

After the most recent repair work on the aircraft by Rocky Mountain and Central, possession of it was returned to Wyoming Airlines, and it was flown by Wyoming Airlines in connection with its business. A lien statement was not filed by either Rocky Mountain or Central.

After a trial to the court, judgment was entered in favor of appellee on its complaint and against Rocky Mountain and Central on their counterclaim. Appellee was awarded $60,000 damages against Rocky Mountain for wrongful detention of the aircraft.

Rocky Mountain alleges error: (1) in the holding by the trial court that its lien was lost upon surrender of the possession of the aircraft without first filing a lien statement; and (2) in application by the trial court of an improper measure of damages

to arrive at the amount of $60,000. Rocky Mountain and Central allege error in exclusion by the trial court of evidence relative to their theory of unjust enrichment, quantum meruit or quasi-contract claims (Rocky Mountain includes right of offset to damages as one of the theories to which this evidence was applicable).

We affirm.

## POSSESSION NECESSARY FOR MECHANIC'S LIEN

Wyoming Airlines took the aircraft from Rocky Mountain and flew it after the repairs on which Rocky Mountain claims a lien were made. Rocky Mountain did not file a lien statement. Rocky Mountain contends that its lien was valid by virtue of subsequent acquisition by it of possession of the aircraft.

Following are pertinent portions of the statutes which are dispositive of this issue:

Section 29–7–101(a), W.S.1977:

"(a) Any person, firm or corporation who makes, alters, repairs, bestows labor upon, transports, stores or keeps any goods or chattels, or who feeds, herds, pastures or cares for any domestic or wild animal, at the request of the owner or any person in possession thereof, has a lien on such goods, chattels or animal for his or its reasonable charges for the labor, services, materials and feed performed or provided."

Section 29–7–102, W.S.1977:

"A lienor *may retain possession of the property* to which the lien pertains until paid for the labor, services, materials and feed which entitle the lienor to assert the lien; provided the right of possession shall terminate six (6) months after the date upon which the charges for the labor, services, materials and feed become due and payable unless the lienor has commenced proceedings to foreclose the lien as provided in this act [§§ 29–7–101 to 29–7–106] within such six (6) months." (Emphasis supplied.)

Section 29–7–103(a) and (b), W.S.1977:

"(a) A lienor *desiring to continue a lien without retaining possession* may, with the written consent of the owner, *before releasing possession,* file a lien statement in the office of the county clerk of the county where the property is located.

"(b) A lien statement shall set forth the name and address of the lienor, the name and address of the owner of the property, a description of the property, the amount of the lien and the nature of the labor, services, feed and materials giving rise to the lien, *and shall contain a statement that the lienor was in possession of the property at the time the lien statement was filed.* A lien statement shall be verified under oath by the lienor or his agent or attorney." (Emphasis supplied.)

Section 29–7–104, W.S.1977:

"(a) A lien under this act [§§ 29–7–101 to 29–7–106] shall terminate:

"(i) *Upon a lienor's voluntary surrender of possession of the property, unless a lien statement has previously been filed* as provided in section 3 [§ 29–7–103];

"(ii) Six (6) months after the date upon which the charges for labor, services, materials and feed giving rise to the lien become due and payable, unless a lien statement has previously been filed as provided in section 3 or unless action to enforce and foreclose the lien has been commenced; and

"(iii) Six (6) months after a lien statement has been filed as provided in section 3, unless action to enforce and foreclose the lien has been commenced.

"(b) *Upon termination of a lien, the lienor shall have no further right to possession of the property and no further interest therein.*" (Emphasis supplied.)

■ The foregoing language is plain in that the lien established thereby is a possessory lien which terminates upon the "voluntary surrender of possession" unless "a lien statement has *previously* been filed." The common-law lien was similar:

"The right to a common-law lien is based directly on the idea of possession, and it is indispensable that the one claiming it have an independent and exclusive possession of the property. Such a lien arises only when possession is obtained, *and exists only so long as it is retained.* * * *"" (Emphasis supplied.) 51 Am. Jur.2d Liens § 21, p. 159.

"As a general rule a common-law or other lien dependent on possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches; *and such lien cannot be restored thereafter by resumption of possession.* * * *"" (Emphasis supplied). 53 C.J.S. Liens § 17d(3), p. 864.

We have so held in construing and applying statutes similar to § 29–7–101, W.S. 1977, et seq. and predecessor thereto. See for example, *Fein v. Wyoming Loan & Trust Co.,* 3 Wyo. 331, 22 P. 1150 (1890); and *Nebraska Machinery Company v. Schoenheit Trucking Company,* 76 Wyo. 140, 301 P.2d 555 (1956).

■ The statutes are too plain and unambiguous to require further discussion. Rocky Mountain's lien terminated when it relinquished possession of the aircraft without having previously filed a lien statement. A subsequent obtaining of possession of the aircraft does not restore the terminated lien.

## MEASURE OF DAMAGES

The trial court made the following findings to set $60,000 as the amount of appellee's damages:

"(2) On March 16, 1979, plaintiff [appellee] terminated the lease in accordance with the lease terms because of the lessee's [Wyoming Airlines] default. Plaintiff negotiated another lease with the government of Haiti for a net profit of $20,000.00 per month over a two-year term, contingent upon delivery of the plane to Haiti by April 2, 1979.

"(3) Plaintiff was unable to enter into the contract with Haiti because the defendant [Rocky Mountain] illegally detained the plane past the April 2, 1979, delivery date. Plaintiff was unable to

secure another lease until July, 1979. Therefore, plaintiff lost profits of $20,000.00 per month for three months due to the unlawful detention by defendant, for a total judgment of $60,000.00 plus court costs. * * * " (Bracketed material supplied.)

■ Rocky Mountain contends that the evidence relative to the Haiti lease was speculative and should not have been received. The evidence reflects that appellee began efforts to re-lease the aircraft immediately after termination of the lease with Wyoming Airlines. An agreement to make a lease was entered into with the government of Haiti. The Haiti agreement was obtained by a broker. Appellee offered to post cash or surety bond for double the amount claimed for return of the aircraft in order to meet the time condition of the Haiti agreement. Rocky Mountain refused the offer. The $20,000 per month rental figure was positive. The evidence was adequate to support the finding of existence of the agreement and the terms thereof. There was no evidence presented at the trial or contained in discovery efforts to the contrary.

■ On appeal, we presume findings of fact made by the trial court are correct, and they will not be disturbed where they are not inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *Diamond Management Corporation v. Empire Gas Corporation,* Wyo., 594 P.2d 964 (1979); and *Madrid v. Norton,* Wyo., 596 P.2d 1108 (1979).

Rocky Mountain also contends that the rentals to be received under the defaulted Wyoming Airlines lease ($15,000 per month) rather than those to be received under the Haiti lease ($20,000 per month) should have been the measure of loss to appellee.

■ Section 1–34–113, W.S.1977 provides that " * * * judgment shall be rendered for adequate damages to the plaintiff for the illegal detention * * * " of the replevined property. Lost profits are a proper basis for determining such damages if capable of being reasonably calculated. *Hercules*

*Drayage Co., Inc. v. Chanco Leasing Corporation,* 24 Ariz.App. 598, 540 P.2d 724 (1975); *Wolff v. Slusher,* 161 Ind.App. 182, 314 N.E.2d 758 (1974); *Steel Motor Service v. Zalke,* 6 Cir. 1954, 212 F.2d 856; *Marcante v. Hein,* 51 Wyo. 389, 67 P.2d 196 (1937). Loss of profits and damages for loss of property and business cannot both be recovered. *Marcante v. Hein,* supra; see *Tillis v. Calvine Cotton Mills, Inc.,* 251 N.C. 359, 111 S.E.2d 606 (1959).

■ The $20,000 per month for lost profits was an exact calculation. Appellee was entitled to damages which would compensate it for the loss occasioned by the wrongful deprivation of the possession of the aircraft. In an appropriate case, damages equal to those occasioned by a breach of contract would properly compensate for the loss, but such is not the exclusive method to do so. In this case, the loss of established profits was a proper measure of damages. The $20,000 per month figure was a net profit figure. The Haiti agreement also required payment of $35 per hour engine depreciation allowance. Such payment for depreciation, which was not included in the damages to be paid by Rocky Mountain makes the $20,000 rental payment net after depreciation.

■ Lastly in this respect, Rocky Mountain contends that the period for which damages should be computed is only from the time of illegal detention of the aircraft to the time of the release of possession of it as ordered by the court, i. e., the last half of the month of March 1979. Again, however, appellee's lost profits were not restricted to that period. The failure by Rocky Mountain to release the aircraft—even after an offer was made to furnish a bond in double the amount of the claim—resulted in the net loss of rentals in the amount of $20,000 per month for the period between the loss of the Haiti agreement and the implementation of a replacement one. This period exceeded three months. The three-months' period made allowance for times of negotiation and transportation of the aircraft. There is no evidence reflecting procrastination on appellee's part in mitigating the

damage. Appellee took immediate action to make the aircraft become productive. We find no error in the damage award.

## QUANTUM MERUIT, ETC., EVIDENCE

Rocky Mountain and Central argue that the repairs made by them on the aircraft during the time it was under lease to Wyoming Airlines resulted in a benefit to appellee, and that appellee should pay the value thereof to them under a theory of quantum meruit, unjust enrichment or quasi contract. They contend that the trial court erred in refusing to allow the introduction into evidence of a number of invoices reflecting such repairs. Their argument is premised on the contention that the "actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law and quantum meruit are essentially the same." They argue primarily that appellee was unjustly enriched by virtue of receiving a benefit from the repairs to the aircraft.

"Unjust enrichment" is fundamental to the law of restitution. Quoting from Restatement, Restitution § 1 (1937), Professors Calamari and Perillo say:

"The common thread which draws these actions together is that 'one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss.' At the core of the law of restitution is the principle that 'A person who has been unjustly enriched at the expense of another is required to make restitution to the other....'" Calamari & Perillo, Law of Contracts (2nd Ed.), § 15–2, p. 571 (1977).

And, as stated at 66 Am.Jur.2d Restitution and Implied Contracts § 3, p. 945:

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

See *Roberts v. Roberts*, 64 Wyo. 433, 196 P.2d 361 (1948), reh. denied 64 Wyo. 433, 197 P.2d 697 (1948).

■ The lease under which Wyoming Airlines held appellee's aircraft required Wyoming Airlines to be responsible for all costs of maintenance and operation. The aircraft was to be returned to appellee in an "airworthy" condition—the same condition in which it was received. Appellee did not benefit from the repairs made by Rocky Mountain beyond that contracted for by Wyoming Airlines. Wyoming Airlines benefited from such repairs to the extent of fulfilling its obligation under the lease. The trial court stated the situation as follows in its findings of fact and conclusions of law:

"(4) The claims of defendant [Rocky Mountain] and intervenor [Central] for damages based upon a theory of unjust enrichment are not supported by the evidence introduced or offered. There was no conduct by plaintiff [appellee] or any relationship between plaintiff and intervenor or defendant which would give rise to an award. Plaintiff had no contact with defendant or intervenor concerning the repairs before those repairs were completed. The remedy of restitution for unjust enrichment is an equitable action, requiring the claimant to qualify under the 'clean hands' doctrine. Defendant and intervenor do not meet this test in the light of defendants wrongful withholding of the plane, in the absence of evidence showing that the claim against Wyoming Airlines was pursued, and considering the interlocking relationship among defendant, intervenor, and Wyoming Airlines, with the subsequent payment by Mr. Davis, President of Wyo-

ming Airlines and now majority stockholder in the defendant company, to defendant in an amount approximating its claim. Further, it was not shown by a preponderance of the evidence that plaintiff was enriched, unjustly or otherwise, by the work of defendant or intervenor. There was no showing that plaintiff received the plane in any better condition than it was entitled to under the terms of its lease. Plaintiff was obligated to deliver the plane in an airworthy condition and was entitled to receive it back in the same shape. This is what happened." (Bracketed material supplied.)

The record supports the findings of the trial court. Not only is there a lack of showing that appellee was enriched, but the equitable standing of Rocky Mountain and Central is questionable.

" * * * Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust. * * * " *McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977).

The admission into evidence of the invoices reflecting repairs made on the aircraft at Wyoming Airlines' request would not pertain to the relationship of the parties. Such admission would not change the foregoing reasons for rejecting the unjust enrichment theory of Rocky Mountain and Central. The exclusion of the invoices from evidence was not prejudicial error.

Affirmed.