# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 151

OCTOBER TERM, A.D. 2013

*December 11, 2013*

JOHN C. McTIERNAN, BEAR CLAW
CATTLE COMPANY, and GAIL
SISTRUNK,

Appellants
(Defendants),

v.                                                          S-13-0109

JAMES L. JELLIS,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellants:*
    Jeffrey J. Gonda and Amanda K. Roberts of Lonabaugh and Riggs, LLP, Sheridan,
    Wyoming; and Bruce S. Asay and Gregory B. Asay of Associated Legal Group,
    LLC, Cheyenne, Wyoming.  Argument by Mr. Gonda.

*Representing Appellee:*
    Kendal R. Hoopes of Yonkee & Toner, LLP, Sheridan, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, and BURKE, JJ, and PERRY, D.J.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building,
Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be
made before final publication in the permanent volume.

**VOIGT, Justice.**

[¶1]    James Jellis is a rancher in Sheridan County, Wyoming, and owns a beefalo cattle herd.   Pursuant to an oral agreement with John McTiernan, Jellis kept his herd on McTiernan's ranch near Dayton, Wyoming.[1]   A dispute arose between the parties regarding their oral agreement, culminating in to a lien being asserted by McTiernan and a legal action being filed by Jellis.   The jury found, *inter alia*, McTiernan liable for conversion of Jellis' beefalo herd, but also found McTiernan entitled to a lien against the same pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq*.  McTiernan filed a post-trial motion based on several theories, including that a new trial was warranted because of the inconsistent verdict.   We find the verdict is contrary to law and cannot be reconciled; therefore, we must conclude the district court abused its discretion in denying McTiernan's motion for new trial.  We remand for a new trial.

### ISSUE

[¶2]    The dispositive question in this matter is one that concerns whether a new trial is necessary because of an inconsistent verdict; for that reason, we restate the controlling issue as follows:[2]

[¶3]    Is the jury's verdict finding McTiernan liable for conversion of a beefalo herd, while at the same time finding him entitled to a lien against the same pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq*., contrary to law?

### FACTS

[¶4]    In January 2010, Jellis purchased a beefalo cattle herd from McTiernan who owned the Bear Claw Ranch near Dayton, Wyoming.  The parties gathered the respective herd, Jellis took possession, and paid for the cattle in two installments.  Thereafter, Jellis sought to graze his herd on McTiernan's ranch and the parties discussed such a possibility.

[¶5]    McTiernan agreed to let Jellis keep his newly acquired beefalo herd on a designated pasture of the Bear Claw Ranch for a certain fee.  The parties, unfortunately, never reduced their agreement to writing and a subsequent dispute arose as to the terms. Jellis claims the agreement was for an annual grazing lease for the sum of $7.00 per acre

---

[1] Bear Claw Cattle Company and Gail Sistrunk are also named appellants.  The appellants are collectively referred to as "McTiernan."

[2] McTiernan presents several alternative issues concerning alleged errors committed by the district court. Because we find the jury's verdict is contrary to law and a new trial is required, we will not address the remaining issues.  *See Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 39, 135 P.3d 598, 612 (Wyo. 2006); *Hack v. Pickrell*, 515 P.2d 134, 135 (Wyo. 1973) ("Because it could be dispositive of this case, consideration will first be given to the asserted proposition that the verdict is contrary to law.").

1

per year for rangeland and $17.50 per acre per year for dry land hay acreage. Under the grazing lease, Jellis would remain in possession of his herd and be responsible for their feed and care.

[¶6] McTiernan on the other hand contends the agreement was one for an agistment, with terms consisting of pasturing and hay for $20.00 per animal unit monthly ("AUM"). "The particular kind of bailment under which a person, for a consideration, takes in cattle to graze and pasture on his or her land is technically termed an agistment . . . [and] involves an actual transfer of possession and control over the animals in question." 4 Am. Jur. 2d *Animals* § 57 (2007). However, a "landlord or lessor not having possession, control, or charge of the care or feeding of animals of the tenant or lessee generally is not entitled to claim a statutory [agister] lien." 4 Am. Jur. 2d *Animals* § 58 (2007).

[¶7] In June 2010, Jellis paid McTiernan an amount equal to the first half of the 2010 lease (February–July 2010) per the terms understood by Jellis. At the end of 2010, Jellis approached McTiernan about continuing to keep the herd on the Bear Claw Ranch in 2011, to which McTiernan agreed. In February 2011, Jellis then paid McTiernan for the second half of 2010.

[¶8] In the spring of 2011, the parties' neighborly business relationship deteriorated. On April 26, 2011, McTiernan lodged an unfounded complaint with the Wyoming Livestock Board alleging that Jellis' cattle "were not being fed." The next day, April 27, McTiernan locked the gates that provided Jellis access to his cattle. Jellis discovered the gates were locked the same day, when one of his employees went to feed the herd. Jellis contacted McTiernan and asked that he have access to his cattle, but McTiernan refused. On May 2, 2011, McTiernan filed a lien statement pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq.* for payments allegedly owed under their oral agreement, totaling $23,875.00. Because McTiernan denied Jellis access to the herd beginning on April 27, 2011, McTiernan provided care and feed to the cattle from that time on until their court-ordered release back to Jellis five months later.

[¶9] Jellis filed a complaint and petition for release of his cattle on June 8, 2011, and expedited proceedings were held before the district court regarding release of the lien. Jellis asserted the lien was knowingly false and groundless, requiring release pursuant to Wyo. Stat. Ann. § 29-1-311(b).[3] As a consequence, Jellis argued that McTiernan

---

[3] Wyo. Stat. Ann. §§ 29-1-301 through 311 were revised and renumbered during the 2010 legislative session, effective July 1, 2011. *See* 2010 Wyo. Sess. Laws, ch. 92, § 3. Wyo. Stat. Ann. § 29-7-103 was also amended during this same legislative session to reflect the renumbering of Wyo. Stat. Ann. § 29-1-301 through 311. Wyo. Sess. Laws, ch. 92, § 2. The underlying action was filed on June 8, 2011, prior to the repeal and renumbering. Accordingly, we will apply the relevant statutes as they existed prior to the 2011 amendments—Wyo. Stat. Ann. § 29-1-301 *et seq.* (LexisNexis 2009) and Wyo. Stat. Ann. § 29-7-101 *et seq.* (LexisNexis 2009).

wrongfully converted the beefalo herd. McTiernan countered, positing he had a valid agister's lien due to Jellis' failure to pay amounts due under their oral agreement.

[¶10] The district court concluded it could not resolve the lien's validity in the expedited proceeding and reserved its ruling for the lien foreclosure proceedings. However, the district court allowed the release of the cattle upon Jellis posting a security bond in the statutory amount required—$35,812.50—which was one and one-half times the amount of the asserted lien, $23,875.00. Jellis posted the requisite bond to satisfy the lien and a special master was appointed to sort and release the beefalo back to Jellis. Pursuant to the district court's order and supervision by the special master, on September 19, 2011, Jellis retrieved his cattle from the Bear Claw Ranch.

[¶11] Thereafter, the case proceeded to a jury trial. After four days of hearing evidence and argument, the jury returned a special verdict finding McTiernan liable for conversion of Jellis' cattle and awarded Jellis $18,700.00 in damages. However, the jury also found that McTiernan was entitled to the lien claimed for feed and pasturage from December 1, 2010 through May 2, 2011, and awarded McTiernan $1,900.00 for such services.[4]

[¶12] Before the jury was released, McTiernan objected to the verdict claiming it was inconsistent because he could not be liable for conversion of Jellis' beefalo herd if he was entitled to a lien against the same. The district court requested that the motion be made in writing to be heard at a later date and excused the jury. Thereafter, McTiernan filed post-trial motions for judgment as a matter of law, or alternatively, for a new trial—pursuant to W.R.C.P. 50 and 59—based on several theories, including a new trial was warranted because of the inconsistent verdict. The district court denied McTiernan's post-trial motions and entered a final judgment incorporating the jury's verdict. This appeal was timely perfected.

## STANDARD OF REVIEW

[¶13] District courts "have broad discretion when ruling on a motion for new trial, and they will not be reversed absent an abuse of that discretion." *Pauley v. Newman*, 2004 WY 76, ¶ 17, 92 P.3d 819, 825 (Wyo. 2004) (quoting *Garnick v. Teton Cnty. Sch. Dist. No. 1*, 2002 WY 18, ¶ 6, 39 P.3d 1034, 1038 (Wyo. 2002)). This case, however, also requires interpretation of the relevant lien statute for personal property. Statutory interpretation is a question of law, which we review *de novo*. *Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 162 (Wyo. 2005).

---

[4] The jury also determined McTiernan engaged in conduct such that he should be required to pay Jellis punitive damages, awarding Jellis $50,000.00.

DISCUSSION

[¶14] To resolve this matter, we must first determine whether the existence of a lien under Wyo. Stat. Ann. § 29-7-101 *et seq.* depends on the lien claimant's possession of the tangible personal property. In doing so, we strive to give effect to the legislature's intent and begin by looking at the ordinary and obvious meaning of the words employed according to their arrangement and connection. We also recognize "[l]ien statutes create remedies in derogation of common law and must be strictly construed" and "[w]e will not extend the scope of statutory lien laws." *Coones v. FDIC*, 894 P.2d 613, 616 (Wyo. 1995) (citations and some quotations omitted).

[¶15] Title 29 of the Wyoming Statutes establishes lien rights to persons performing work or providing services for certain kinds of property. Importantly, the requirements vary depending on the type of property at issue. For instance, Chapter 2 governs liens for work performed on real property. Chapter 3 controls liens concerning mineral interests. Chapter 4 deals with ditches, canals, and reservoirs. Chapter 5 is limited to owners and operators of harvesting machines. And Chapter 7 governs liens against personal property. Our discussion begins by examining the pertinent lien statute governing personal property, which grants lien rights to persons who perform work on tangible personal property or persons caring for or keeping animals. Because the language and context of the relevant statute is critical to our decision, we quote the bulk of the act, despite its length:

### § 29-7-101. Persons entitled to lien; exception.

(a) Any person is entitled to a lien on any goods, chattels or animals for his reasonable charges for work or services performed or feed provided when he:

(i) Makes, alters, repairs, bestows work upon, transports, stores or keeps the same; or

(ii) Feeds, herds, pastures or cares for any domestic or wild animal lawfully held in captivity. Any person creating a lien under this paragraph shall file the lien in the office of the secretary of state.

. . . .

### § 29-7-102. Right of possession by lien claimant; termination thereof; removal of property without lienholder's consent; penalty therfor; filing of lien statement in lieu of possession.

(a)  A lien claimant may retain possession of the property to which the lien pertains until paid for the labor, services, materials and feed which entitle the lien claimant to assert the lien.   However, the right of possession terminates six (6) months after the date upon which the charges become due and payable unless the lien claimant has commenced proceedings to foreclose the lien as provided by W.S. 29-7-101 through 29-7-106.

(b) If any person causes to be removed from the possession of a lien claimant any property or part thereof which is subject to the lien created by W.S. 29-7-101 through 29-7-106 from the place where the property was located when the lien is perfected, without the written consent of the owner and the holder of the lien or his agent, either originally or by transfer, the person so removing the property affected by the lien is guilty of a misdemeanor.  On conviction he may be punished by a fine of not more than seven hundred fifty dollars ($750.00).

(c)  If a lien claimant desires to continue a lien without retaining possession, he may before voluntarily releasing possession file a lien statement in the office of the county clerk of the county where the property is located, or in the case of a feeder's lien under paragraph (a)(ii) of this section, in the office of the secretary of state.

(d)  If possession is terminated without the lien claimant's consent, he may perfect the lien by filing a lien statement on or before thirty (30) days after possession is terminated.

## § 29-7-103.  Lien statement; additional contents; county clerk to note lien on certificate of title.

(a)  A lien statement under W.S. 29-7-101 through 29-7-106 shall provide in addition to the requirements of W.S. 29-1-301(b) [now W.S. 29-1-312(b)] whether the lien claimant was in possession of the property at the time the lien statement was filed or the owner consented to the filing of the lien.  Notwithstanding W.S. 29-1-301(a) [now W.S. 29-1-312(a)], a feeder's lien created pursuant to W.S. 29-7-

5

101(a)(ii) shall be filed in the office of the secretary of state together with any applicable filing fees.

. . . .

§ 29-7-104. Termination of lien; effect thereof on claimant's right of possession.

(a) A lien under W.S. 29-7-101 through 29-7-106 terminates:

(i) Upon a lienor's voluntary surrender of possession of the property, unless a lien statement has previously been filed as provided in W.S. 29-7-103;

(ii) One hundred eighty (180) days after the date upon which the work, services, materials and feed giving rise to the lien were performed or furnished unless a lien statement has previously been filed as provided by W.S. 29-7-103; and

(iii) One hundred eighty (180) days after a lien statement is filed as provided in W.S. 29-7-103, unless action to enforce and foreclose the lien has commenced.

(b) Upon termination of a lien, the lien claimant has no further right to possession of the property and no further interest therein.

§ 29-7-105. Repossession; enforcement of lien by sale; notice thereof to known claimants; satisfaction by any claimant; title of good faith purchaser; disposition of proceeds; additional creditors' rights; liability for noncompliance with section; "commercially reasonable".

(a) Subject to the termination of a lien as provided in W.S. 29-7-104, a lienor who has surrendered possession involuntarily has the right to repossess the property subject to the lien. In repossessing a lienor may proceed without judicial process if this can be done without breach of the peace. A lienor may also replevy the property or use any other judicial action available.

. . . .

Wyo. Stat. Ann. §§ 29-7-101 through 29-7-105 (LexisNexis 2009).

[¶16] While the initial section, § 29-7-101, does not include the term possession, such an omission does not destroy the obvious by not mentioning it futilely. The plain and ordinary language contained in the remaining sections answers our question in the affirmative. Reading the provisions of Wyoming's lien statute for personal property *in pari materia*, a reasonable construction convinces us that a lien claimant must have possession of the article in order to establish and maintain the lien.[5] Reasons abound to support our conclusion. For instance, the term "retain" set forth in § 29-7-102(a) is defined as "to keep in possession." Merriam-Webster's Collegiate Dictionary 999 (10th ed. 1999). Consequently, one must have possession to retain the same. Furthermore, § 29-7-103(a)'s requirement that the claimant state he is in possession at the time of filing or that the owner consented, provides *prima facie* proof the claimant is entitled to the lien. These alternative requirements can be traced to the common law. "For a common-law lien to arise, a claimant must have exclusive possession of the property, since the lien is based directly on the idea of possession." 51 Am. Jur. 2d *Liens* § 25 (2011); *see also* 51 Am. Jur. 2d *Liens* § 22 (2011). "In the absence of a lien given by law, neither party can create one without the consent or agreement of the other, nor may a lien be created on property without the knowledge or consent of its owner." 51 Am. Jur. 2d *Liens* § 12 (2011).

[¶17] Put simply, this statute codifies the common law principle that a person has a possessory interest in the tangible personal property left in his or her care by the owner or legal possessor and in which the person has invested value.[6] Our conclusion in the

---

[5] We note that several specific exceptions exist to the requirement of possession: (1) the owner voluntarily consents to the lien (Wyo. Stat. Ann. § 29-7-103(a)); (2) the lien claimant files a lien statement with the secretary of state before voluntarily releasing possession (Wyo. Stat. Ann. § 29-7-102(c)); or (3) possession was terminated without the lien claimant's consent and he perfects the lien by filing a lien statement (Wyo. Stat. Ann. § 29-7-102(d)).

[6] American Jurisprudence explains:

> The right to a common-law lien is based directly on the idea of possession, and it is indispensable that the one claiming it have independent and exclusive possession of the property.
> Such a lien arises only when possession is obtained, and exists only so long as possession is retained; possession is essential to both the creation and the preservation of the lien.
> One in possession of property under a lien is the owner of the property as against all the world, and even against the actual owner, until the claim is paid, and no one, not even the actual owner, may disturb the lienor's possession without previous payment of the claim.

51 Am. Jur. 2d *Liens* § 29 (2011).

instant case is not original, however. Over a hundred years ago, in *Turner v. Horton*, this Court explained:

> A lien in its proper legal sense is said to import that one is in possession of the property of another, and that he detains it as security for some demand which he has in respect of it, and hence it implies possession by the creditor, title in the debtor, and a debt arising out of the specific property. 1 Jones on Liens (2d Ed.) § 20. At common law a person who had bestowed labor upon an article of personal property, or done some other act in reference to it by which its value was enhanced, had the right to detain the same until reimbursed for his expenditure and labor. That is known as the common-law lien. Its continuance depended upon possession, and, whenever the possession was voluntarily surrendered, the lien was lost. *Oakes v. Moore*, 24 Me. 214, 41 Am. Dec. 379 [(1844)]; *Arians v. Brickley*, 65 Wis. 26, 26 N. W. 188, 56 Am. Rep. 611 [(1885)].

> Our statutes have extended the lien to persons not entitled to it at common law, such as agisters and livery stable keepers, but it is generally held that statutes of that character are to be construed in accordance with the principles controlling the lien at common law. 1 Jones on Liens (2d Ed.) § 749. Hence, unless the statute either expressly or by clear implication provides to the contrary, possession is essential to the existence and preservation of the lien. It was so held by this court with reference to the lien of an agister under the statute, and it was said that, "the lien being founded upon possession, it must ordinarily cease when the possession ceases. If one voluntarily parts with the possession of the property, the lien is thereby lost." *Fein v. Wyo. Loan & Trust Co.*, 3 Wyo. 331[, 22 P. 1150 (1890)]. The necessary effect of that decision is that the nature of the remedy provided for enforcing the lien is not such as to eliminate the element of possession.

18 Wyo. 281, 293, 106 P. 688, 690-91 (1910). Seventy years later in *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, we again examined Wyoming's personal property lien statute and reaffirmed that possession is a requisite essential.

> The foregoing language [of Wyo. Stat. Ann. § 29-7-101 *et seq*.] is plain in that the lien established thereby is a

8

possessory lien which terminates upon the "voluntary surrender of possession" unless "a lien statement has *previously* been filed." The common-law lien was similar:

> "The right to a common-law lien is based directly on the idea of possession, and it is indispensable that the one claiming it have an independent and exclusive possession of the property. Such a lien arises only when possession is obtained, and *exists only so long as it is retained.* * * *" (Emphasis supplied.) 51 Am.Jur.2d Liens § 21, p. 159.

> "As a general rule a common-law or other lien dependent on possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches; *and such lien cannot be restored thereafter by resumption of possession.* * * *" (Emphasis supplied). 53 C.J.S. Liens § 17d(3), p. 864.

> We have so held in construing and applying statutes similar to § 29-7-101, W.S.1977, *et seq.* and predecessor thereto. See for example, *Fein v. Wyoming Loan & Trust Co.*, 3 Wyo. 331, 22 P. 1150 (1890); and *Nebraska Machinery Company v. Schoenheit Trucking Company*, 76 Wyo. 140, 301 P.2d 555 (1956).

> The statutes are too plain and unambiguous to require further discussion. Rocky Mountain's lien terminated when it relinquished possession of the aircraft without having previously filed a lien statement. A subsequent obtaining of possession of the aircraft does not restore the terminated lien.

623 P.2d 758, 761 (Wyo. 1981).

[¶18] Most recently, in *Smith v. Lewis Auto Body*, we had occasion once again to examine this statute when faced with the issue of whether a lien claimant was entitled to fees for storage of a vehicle after a demand for release was lodged. 2011 WY 109, 255 P.3d 935 (Wyo. 2011). We concluded that a lien claimant is not so entitled, explaining:

> As indicated above, the argument that a repair shop has "no choice" but to retain possession of a vehicle as security was rejected in *Country Mutual* [*Insurance Company*

*v. Styck's Body Shop, Inc.*] because, as the court noted, the body shop could have released the vehicles in its possession and sued for damages. [396 Ill.App.3d 241, 249, 335 Ill. Dec. 382, 918 N.E.2d 1195 (Ill.App.Ct. 2009)]. It was not necessary for Lewis to retain possession of the vehicle in order to file an action for damages. Lewis also was entitled to assert a lien regardless of whether it had possession of the vehicle. *See* Wyo. Stat. Ann. §§ 29-7-101 through 29-7-106. Under Wyo. Stat. Ann. § 29-7-102(a), Lewis would have been entitled to retain possession pursuant to a valid lien until it received payment for its services. We hold, however, that Lewis was not also entitled to accumulate storage charges during this period.

*Id.* at ¶ 19, at 940. While the statement that "Lewis also was entitled to assert a lien regardless of whether it had possession of the vehicle" may be misconstrued by some to mean initial possession is not necessary, our interpretation is one that is narrowly tailored to the context of that case; that is, a party does not need to retain possession after a lien statement is filed in accordance with Wyo. Stat. Ann. § 29-7-102(c).

[¶19] Consistent with our long-standing precedent, we again conclude a lien pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq.* is possessory[7] and a person must have possession of the article to assert such a statutory lien. *See Coones*, 894 P.2d at 616-17; *Rocky Mountain Turbines*, 623 P.2d at 760; *Nebraska Mach. Co. v. Schoenheit Trucking Co.*, 76 Wyo. 140, 149, 301 P.2d 555, 559 (Wyo. 1956); *Tillotson v. Delfelder*, 40 Wyo. 283, 289, 276 P. 935, 937 (Wyo. 1929); *Washakie Livestock Loan Co. v. Meigh*, 50 Wyo. 480, 492-99, 62 P.2d 523, 527-530 (Wyo. 1936); *Thomas v. Mann*, 22 Wyo. 99, 108-09, 135 P. 1088, 1090 (Wyo. 1913); *Turner*, 18 Wyo. 281, 293-94, 106 P. at 690-91; *Fein v. Wyo. Loan & Trust*, 3 Wyo. 331, 332, 22 P. 1150, 1151 (Wyo. 1890). We also solicitously have studied the evolution of Wyoming's lien statute for personal property, which confirms possession has been, and continues to be, required. *See* Wyo. Comp. Stat. Ann. §§ 3753 and 3754 (Mullen 1910); Wyo. Comp. Stat. Ann. §§ 55-101 through 55-125 (Bobbs-Merrill 1945); Wyo. Stat. Ann. § 29-7-101 (Michie 1977); 1981 Wyo. Spec. Sess. Laws, ch. 17 § 29-7-101; 2004 Wyo. Sess. Laws, ch. 24, § 1.

[¶20] To find otherwise is *contra legem* and would render several provisions of the statute meaningless and produce absurd results. We have said:

> Statutes must be construed so that no portion is rendered meaningless. Interpretation should not produce an

---

[7] A possessory lien is a "lien allowing the creditor to keep possession of the encumbered property until the debt is satisfied." Black's Law Dictionary 1008 (9th ed. 2009).

absurd result. We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. Each word of a statute is to be afforded meaning, with none rendered superfluous. Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose.

*See Hede*, 2005 WY 24, ¶ 6, 107 P.3d at 163 (citations and quotations omitted). Perhaps an example would be helpful to illustrate. If possession were not required, a person who changes a tire on the side of a road, or merely leases his pasture for grazing, can simply file a lien statement. In these circumstances, possession has never been acquired by the claimant and there is no risk of losing entitlement of the lien due to subsequent possession being lost. But, if the person tows the car back to his shop and changes the tire there, or the person is an agister[8], the person has possession which cannot be given up until a lien statement is filed, otherwise he will lose his lien pursuant to the express language of Wyo. Stat. Ann. §§ 29-7-102(c) and 29-7-104(a)(i). We believe the legislature did not intend to create such a circumstance. We note that one not in possession—and thus not entitled to a personal property lien under Wyo. Stat. Ann. § 29-7-101 *et seq.*—is not left without a remedy. He can still bring an action for damages. *See Smith*, 2011 WY 109, ¶ 19, 255 P.3d at 940.

[¶21] Finding the existence and continuance of a lien pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq.* is dependent upon possession, we turn to whether the jury's verdict finding

---

[8] Corpus Juris Secundum explains:

> To agist is to pasture animals for hire. Agistment is a bailment in which the bailee takes in and feeds or pastures animals upon the land for consideration, either at a named price or for the reasonable value of the services rendered. In the context of such bailment, the taking of such animals is synonymous with the delivery and acceptance of property by the alleged bailee. Generally, agistment is a contract whereby a person, called an agistor, has possession and control of the subject animals, as well as, where applicable, possession of the land. For an agistment bailment to be established, there must be a showing of some duty of care of the animals bargained for and accepted by the landowner. Not every agreement for the use of a pasture carries with it the duty of care on the part of the landowner. An agistment is distinguishable from a lease.

3B C.J.S. *Animals* § 73 (2013).

McTiernan liable for conversion while at the same time entitled to a lien under Wyo. Stat Ann. § 29-7-101 *et seq*., can be reconciled as a matter of law.

> "It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." [Citations omitted.]

*Rivermeadows, Inc. v. Zwaanshoek Holding & Financiering, B.V.*, 761 P.2d 662, 665 (Wyo. 1988) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2510, pp. 515–17 (1971)). With this guidance in mind, it is apparent we cannot harmonize the jury's verdict.

[¶22] The jury was presented with a special verdict form, within which it found:

### Plaintiff's Claims

**Conversion**

1. Do you find that the Plaintiff, Mr. Jellis, is entitled to a judgment against Defendants John C. McTiernan, Bear Claw Cattle Company, and Gail Sistrunk with respect to his conversion claim?

Yes___X___ No_____

### Defendants' Claims

**Foreclosure of Lien**

1. Do you find that Defendants John C. McTiernan and Bear Claw Cattle Company were entitled to the lien claimed for the feed and pasturage of Jellis cattle during the time period beginning December 1, 2010 through May 2, 2011?

Yes___X___ No_____

As we explained, *see supra* ¶ 16, only one who is in lawful initial possession of the subject personal property is entitled to a lien pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq*. The question then becomes whether one who is rightfully in possession of personal property and retains the same pursuant to his or her lien rights can be liable for conversion at the same time. The answer is no.

[¶23] "Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *Johnson v. Reiger*, 2004 WY 83, ¶ 27, 93 P.3d 992, 999 (Wyo. 2004). To establish a claim for conversion, the following elements must be met: (1) plaintiff had legal title to the converted property; (2) plaintiff either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property. *See id.* at ¶ 27, at 999-1000. In the instant case, the jury was instructed accordingly.

[¶24] Because the jury found McTiernan entitled to a lien pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq*. against Jellis' beefalo herd, as a matter of law McTiernan could not have converted the same. Wyoming's lien statute authorized McTiernan to retain the subject cattle, thus, he could not have wrongfully exercised dominion over the herd. Conversely, if McTiernan was liable for conversion, then he could not have been found to have lawful initial possession of the cattle, which necessarily follows he could not retain the same and was not entitled to a lien under Wyo. Stat. Ann. § 29-7-101 *et seq*. *See e.g., Fisk Rubber Co. of New York v. Lawer Auto Supply*, 35 Wyo. 283, 298, 248 P. 825, 830 (1926). The jury's verdict is inconsistent and cannot be reconciled as a matter of law.

[¶25] We note Jellis did not cross-appeal and challenge the validity of the subject lien. Consequently, we will not consider whether McTiernan actually had initial lawful possession of the cattle and, therefore, entitled to a lien pursuant to Wyo. Stat. Ann. § 29-7-101. This determination will be left to the jury on remand. Indeed, if the jury finds McTiernan was in possession of the cattle pursuant to what he claims was an agistment agreement—thereby entitling him to a lien under Wyo. Stat. Ann. § 29-7-101—McTiernan is not liable for conversion. Conversely, if the jury finds that McTiernan was not in possession of the cattle—rather, the oral agreement was for a grazing lease—then McTiernan is not entitled to a lien and liable for conversion. *See Panhandle Feeders, Inc. v. C & D Enterprises, LLC*, 1 P.3d 647, 649 (Wyo. 2000); 4 Am. Jur. 2d *Animals* §§ 57-58 (2007). Additionally, it may be that the jury finds McTiernan liable for conversion and not entitled to a lien, but that McTiernan is owed money under a grazing lease from December 1, 2010 through May 2, 2011. Because of this possibility, a provision in the special verdict form ought to be added accordingly.

## CONCLUSION

[¶26]   A lien under Chapter 7 of Title 29 is possessory and its existence dependent upon possession of the subject personal property.   As a result, the jury's finding that McTiernan was liable for conversion is inconsistent as a matter of law with its finding that McTiernan was also entitled to a personal property lien pursuant to Wyo. Stat. Ann. § 29-7-101 *et seq*.   We remand to the district court for a new trial.